Miles WILLIAMS, Plaintiff,

v.

John T. REILLY, John M. Thomson, Paul Hoden and Charles McCausland, Defendants.

No. 89 Civ. 0478 (SWK).

United States District Court, S.D. New York.

May 17, 1990.

Miles V. Williams, New York City, pro se.

Otto G. Obermaier, U.S. Atty., S.D. New York, New York City by Thomas A. Zaccaro, Asst. U.S. Atty., for defendants.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

Plaintiff brings this action *pro se* against individual representatives of his employer, the Defense Logistics Agency, seeking a temporary restraining order and damages for alleged deprivations of his constitutional rights and for alleged violations of the Privacy Act, 5 U.S.C. §§ 552a *et seq.*, the Freedom of Information Act, 5 U.S.C. § 552, and several provisions of Title 32 of the Code of Federal Regulations. Plaintiff invokes the jurisdiction of this Court under 28 U.S.C. § 1331 and 5 U.S.C. § 552a(g)(5).

On January 19, 1990, this Court summarily dismissed the complaint for, *inter alia,* lack of subject matter jurisdiction. Pursuant to plaintiff's request, the following is a fuller explanation of the reasons behind the dismissal.

## BACKGROUND

Plaintiff Miles Williams was at all relevant times a civilian employee of the Defense Logistics Agency ("DLA"), which provides support services for the Department of Defense ("DOD"). Williams was originally hired in October, 1985 as a Price/Cost Analyst in the Garden City, New York office of the Contract Administrative Services Management Area ("DCASMA–NY"). DCASMA–NY is a subregional office of the Defense Contract Administration Services Region—New York, ("DCASR–NY"), which provides contract administration and quality assurance services for DOD procurement contracts.

Defendant John Reilly is Command Security Officer for DCASR–NY, and is responsible for the implementation and execution of personnel decisions made at DLA headquarters in Alexandria, Virginia. Declaration of John Reilly at 1 ("Reilly Aff.") The other defendants include Brigadier General John Thomson, the commanding officer of DCASR–NY with general oversight authority; Colonel Paul Hoden, Command Officer of DLA in Virginia; and General Charles McCausland, Director of DLA in Virginia. Defendants' Memorandum in Support of Motion at 3.

The gravamen of Williams' complaint is that the DLA wrongfully downgraded his security clearance, resulting in the loss of a promotion for which he had been selected.[1] The events leading up to this decision began in December, 1987 when an unspecified amount of marijuana was found in the plaintiff's jacket during a routine inspection. This incident was investigated by the Naval Investigative Service ("NIS") of the Department of the Navy.[2] Reilly Dec. at 7. No charges were filed against the plaintiff

---

1. Williams also alludes in his opposition papers to the possibility that he would be terminated from his present employment. However, the Court has no information that this has actually come about.

2. NIS had authority to investigate this incident because plaintiff's department is housed on a Marine base. Letter from Williams to Naval Inspector General, Attached to Plaintiff's Memorandum as Exhibit M at 1.

in connection with this incident because there was inconclusive evidence linking Williams to the marijuana allegedly found. Letter from Department of the Navy to Williams, Attached to Plaintiff's Memorandum as Exhibit Q at 1.

Reilly received a copy of this report from NIS and he forwarded the report to DLA in Virginia, as required by DLA regulations. Reilly Dec. at 7. The NIS report indicated that plaintiff had admitted to naval authorities that he had engaged in illegal drug use. Reilly Dec. at 9. Prompted by this admission, DLA made the decision to review the plaintiff's security clearance. *Id.*

In December 1988, as part of its review of Williams' continued eligibility for security clearance, DLA instructed Reilly to request that Williams complete a Personnel Security Questionnaire, Form 398, and an Authority for Release of Information and Records, Form 2221. *Id* at 10. Citing the voluntary nature of these forms, Williams refused to comply. *Id.* at 10.

During this time, plaintiff also applied and was selected for a promotion to Contract Price/Cost Analyst, GS–12 at DCAS-MA–NY. Letter from DLA to Williams, Attached as Exhibit C at 1. Although DLA informed Williams that he would jeopardize his promotion by not participating in the investigation, Williams continued to refuse to complete the forms. Letter of John Reilly, dated January 3, 1989, attached as Exhibit F to Defendant's Memorandum.

Williams then filed the instant suit, seeking an injunction directing his employers to activate his promotion, cease the investigation and pay monetary damages for loss of earnings. On April 28, 1989, DLA sent Williams a letter informing him that his security clearance had been revoked and that he could appeal the decision to the Deputy Director of DLA. Letter to Williams from James H. Pope, Chairman of DLA Central Adjudication Board, Attached to Plaintiff's Memorandum as Exhibit U. Plaintiff did not appeal. On June 27, 1989, Reilly informed plaintiff by letter that since he had not appealed the decision on his clearance, the decision revoking the clearance had become final, and Williams

was no longer eligible to occupy a sensitive position at DLA. Letter from John Reilly to Williams, Attached to Plaintiff's Memorandum as Exhibit W.

Although Williams' *pro se* complaint is difficult to understand, the Court, conferring upon it the liberal construction due under *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), reads it to allege three basic claims. First, Williams alleges that he was deprived of his constitutional guarantee of due process by the downgrading of his security clearance and the subsequent loss of the promotion for which he had been selected: "I was deprived of a promotion and ... an existing security clearance was downgraded without ... due process in the form of fair notice and the opportunity to be heard." Plaintiff's Memorandum in Opposition at 1. Second, plaintiff claims that DLA and NIS violated his statutory rights to privacy by sharing information about the investigation into the marijuana incident. *Id.* Finally, plaintiff contends that he was wrongfully deprived of his security clearance under the Privacy Act for refusing to complete forms 388 and 2221. *Id.*

## DISCUSSION

*Pro se* complaints must be accorded a close and sympathetic reading. *Haines v. Kerner, supra,* 404 U.S. at 520–21, 92 S.Ct. at 595–96. They must be construed liberally so as to permit any possible valid claim. *Boag v. MacDougall,* 454 U.S. 364, 102 S.Ct. 700, 70 L.Ed.2d 551 (1982). Applying this standard, the Court interprets Williams' claim against the federal officials as a constitutional tort under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

Although it is an unfortunate occurrence to lose a promotion, Williams' complaint presents no viable legal claims. First, the DLA's decision to investigate or revoke a security clearance is not reviewable by this or any court. Second, that decision by the DLA does not invoke the requirement of due process. Finally, the allegations surrounding the DLA officials' conduct of the

marijuana investigation do not state a claim for violation of any statute or agency regulation.

## I. Jurisdiction

Before this Court can consider the merits of these claims, it must ascertain whether it has jurisdiction over the dispute. This Court is a court of limited jurisdiction. *Lockerty v. Phillips*, 319 U.S. 182, 187, 63 S.Ct. 1019, 1022, 87 L.Ed. 1339 (1943). Williams' complaint is essentially premised on a challenge to a decision of DLA, an agency of the Defense Department, to investigate and revoke a security clearance. In addition to arguing that DLA had no authority to receive information concerning the marijuana incident, discussed *infra*, plaintiff argues that DLA should not have commenced an investigation after the NIS investigation proved inconclusive. Plaintiff also argues that his clearance should not have been revoked in light of his exemplary work record.

▮ Plaintiff is essentially asking this Court to evaluate the circumstances of his employment with DLA and to second-guess the discretionary judgment of the Department of Defense. This Court has no authority to engage in this type of review. In *Department of the Navy v. Egan*, 484 U.S. 518, 108 S.Ct. 818, 98 L.Ed.2d 918 (1988), the Supreme Court held that the Merit Systems Appeals Board did not have the statutory authority to review the substantive decision of the Navy to revoke the plaintiff's security clearance. The Court reasoned that:

> The President, after all, is the Commander and Chief of the Army and Navy of the United States. His authority to classify and control access to information bearing on national security and to determine whether an individual is sufficiently trustworthy to occupy a position on the Executive Branch that will give that person access to such information flows primarily from this constitutional investment of power in the President and exists quite apart from any explicit congressional grant....
>
>    \*    \*    \*    \*    \*    \*

> For reasons 'too obvious to call for enlarged discussion,' [quoting *CIA v. Sims*, 471 U.S. 159, 105 S.Ct. 1881, 85 L.Ed.2d 173 (1985) ], the protection of classified information must be committed to the broad discretion of the agency responsible, and this must include broad discretion to determine who may have access to it. Certainly, it is not reasonably possible for an outside nonexpert body to review the substance of such a judgment ... Nor can such a body determine what constitutes an acceptable margin of error in assessing the potential risk ...
>
>    \*    \*    \*    \*    \*    \*

> Thus, unless Congress specifically has provided otherwise, courts have traditionally been reluctant to intrude upon the authority of the Executive in military and national security affairs.

484 U.S. at 526–29, 108 S.Ct. at 823–25. DLA chose to review Williams' eligibility for a security clearance because of evidence that plaintiff had admitted using illicit drugs. DLA ultimately revoked the plaintiff's clearance because of his unwillingness to assist in the investigation by completing the required forms. This decision was within the purview of DLA discretion. *Egan* makes clear that this Court has neither the authority nor the expertise to review this decision. *See also Hill v. Department of Air Force*, 844 F.2d 1407 (10th Cir.1988), *cert. denied*, 488 U.S. 825, 109 S.Ct. 73, 102 L.Ed.2d 49 (1989) (reversing district court's granting of a preliminary injunction against the revocation of a security clearance); *Peterson v. Department of the Navy*, 687 F.Supp. 713 (D.N.H. 1988) (plaintiff's challenge to revocation of a security clearance dismissed). Accordingly the Court has no subject matter jurisdiction to review DLA's decision to investigate or revoke Williams' security clearance.

This threshold jurisdictional determination is not affected by the fact that the challenge is made on the grounds of a constitutional deprivation. "If the statutory constraints imposed by *Egan* could be bypassed simply by alleging illegal discrimination, *Egan* would be vitiated." *Peter-*

son, *supra*, 687 F.Supp. at 715; *see also Hill, supra*, 844 F.2d at 1409 (authority of *Egan* may not be bypassed by invoking alleged constitutional rights). This Court cannot review DLA's decision to investigate or revoke Williams' security clearance.

Moreover, as the following discussion shows, even if the Court had jurisdiction to review the merits of Williams' claim the Court would be unable to find any constitutional defect in the procedure by which his clearance and promotion were lost.[3]

## II. Constitutional Claims

### A. Due Process

■ Williams argues that under the due process guarantees of the Fifth Amendment, he was entitled to fair notice and a hearing prior to the commencement of the investigation into his security clearance, prior to the downgrading of this clearance, and prior to the revocation of his promotion. Plaintiff's Memorandum at 1.

It is well established that due process guarantees do not apply to all deprivations, and not every decision to deny a person a benefit or entitlement requires notice or hearing. *Cafeteria & Restaurant Workers Union v. McElroy*, 367 U.S. 886, 894–95, 81 S.Ct. 1743, 1748–49, 6 L.Ed.2d 1230 (1961). Due process guarantees are applicable only when a property and/or liberty interest is at stake. *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Williams' due process claim thus depends on the presence of a property or liberty interest in his clearance or promotion.

Property rights cannot be created by a mere expectation or unilateral understanding. One "must have a legitimate claim of entitlement" to the benefit. *Board of Regents v. Roth, supra*, 408 U.S. at 577, 92 S.Ct. at 2709. There is no such entitlement here. A security clearance is "merely a temporary permission by the Executive for access to national secrets."

*Hill, supra*, 844 F.2d at 1411. The Supreme Court recently stated that, "[i]t should be obvious that no one has a 'right' to a security clearance." *Egan*, 484 U.S. at 528, 108 S.Ct. at 824; *see also Cafeteria Workers' Union, supra*, 367 U.S. at 893–94, 81 S.Ct. at 1747–48. Moreover, plaintiff was on notice that his security clearance was at all times subject to continual investigation. *See* Reilly Dec. at 6; 32 C.F.R. 154.60. Plaintiff has no property right in his security clearance.

Similarly, there is no liberty interest implicated in the downgrading of plaintiff's security clearance. Due process may be required even if no property interest exists only if the reasons given for the denial of the benefit are made public and would impair the plaintiff's liberty interest in his "good name, reputation, honor or integrity". *Bishop v. Wood*, 426 U.S. 341, 348, 96 S.Ct. 2074, 2079, 48 L.Ed.2d 684 (1976). The reason given for the denial of Williams' clearance was that he refused to assist in the investigation by completing two forms. No liberty interest is implicated by such a revocation, even under the *Bishop v. Wood* rule. The Supreme Court has recently stated with respect to security clearances:

"A clearance does not equate with passing judgment upon an individual's character.... [I]t may be based ... upon past or present conduct, but it also may be based upon concerns completely unrelated to conduct.... 'To be denied clearance on unspecified grounds in no way implies disloyalty or any other repugnant characteristic.' "

*Egan, supra*, 484 U.S. at 528–29, 108 S.Ct. at 824–25 (quoting *Molerio v. FBI*, 749 F.2d 815, 824 (D.C.Cir.1984)). Moreover, pursuant to DOD regulations and in accordance with the Privacy Act, the plaintiff's personnel records, including the reports related to the marijuana incident, are unavailable for public disclosure. *See* 32 C.F.R. 701.24(f) and (g); 5 U.S.C. § 552(b). Thus, there was no possibility of impairment of plain-

---

**3.** The Court engages in this analysis as alternative grounds for dismissal. *See Hill,* 844 F.2d

1407, 1411.

tiff's "good name" or "reputation," as contemplated in *Bishop v. Wood.* Accordingly no liberty interest was implicated by the denial of Williams' security clearance.

Since plaintiff had no property interest in his clearance, and no liberty interest implicated by its revocation, there is no basis for his allegation of a due process violation. *See Hill, supra,* 844 F.2d at 1411 (no due process rights for revocation of security clearance because of absence of property or liberty interest); *see also Medina v. United States,* 541 F.Supp. 719, 723–24 (D.P.R.1982) (no property or liberty interest implicated in revocation of permission to enter military base).

Similarly, here Williams has no cognizable property or liberty interest in his promotion, which was offered contingent upon the granting of a security clearance. Thus he cannot look to the Due Process Clause for relief.

### B. Racial Conspiracy

Plaintiff further complains as follows: "Through a coordinated effort, the Command Security offices of both headquarters DLA and DCASR–NY have abridged my XIV Amendment rights to due process and in so doing, have denied me equal protection...." The Court assumes that Williams means to raise a claim of equal protection as implied by the Fifth Amendment, since the Fourteenth Amendment by its terms applies to the States and not to the Federal government. *Fullilove v. Klutznick,* 448 U.S. 448, 497, 100 S.Ct. 2758, 2784, 65 L.Ed.2d 902 (1980) (citing *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954)).

A thoroughgoing search of plaintiff's complaint yields no averment that his membership in a suspect class caused him to be treated unequally. Accordingly, the Court is at a loss to comprehend the nature of his equal protection claim. Looking outside the Complaint to the letters and exhibits he appends to his memorandum of law, he alludes to racially-based mistreatment. In an exhibit to his Memorandum he states that Reilly was "acting out of personal and racial resentment of" him and that "racial discrimination had reared its ugly head through attempted persecution." Letter from Plaintiff, date unknown, excerpts attached to Plaintiff's Memorandum as Exhibit Y.[4] In another exhibit he refers to a race discrimination complaint he apparently filed with the EEOC prior to commencing this suit, although he does not advise the Court of the status of that action. *See* Plaintiff's Letter to Department of Justice, dated January 3, 1989, attached to Plaintiff's Memorandum as Exhibit R, at 2. On the basis of these attachments, the Court surmises that Williams' present equal protection claim amounts to a claim of race discrimination.

The Court will infer on Williams' behalf that he hereby means to complain of violations of federal civil rights laws. The most probable candidates would be 42 U.S.C. §§ 1981 or 1985, although plaintiff does not cite these, or indeed any, statutory basis for this claim. Not even these statutes, however, can provide the relief that Williams seeks.

In order to make out a conspiracy claim under § 1985(3), a plaintiff must allege that (1) he is a member of a protected class; (2) defendants conspired to deprive him of his constitutional rights; (3) defendants acted with class-based, invidiously discriminatory animus; and (4) the plaintiff suffered injury. *Gleason v. McBride,* 869 F.2d 688, 694–95 (2d Cir.1989); *Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798–99, 29 L.Ed.2d 338 (1971). Unsubstantiated, conclusory, vague or general allegations of a conspiracy to deprive constitutional rights are not enough to survive a motion to dismiss. *See Studifin v. New York City Police Dept.,* 728 F.Supp. 990 (S.D.N.Y.1990) (even *pro se* plaintiff must allege some factual basis to support claim that defendants conspired together to deprive him of his constitutionally protected

---

**4.** The Court will consider matters outside the pleadings as appropriate. Fed.R.Civ.P. 12(b)(6), 56; *San Filippo v. U.S. Trust Co. of New York,* 737 F.2d 246, 256 (2d Cir.1984). Specifically, in order to attempt to understand the nature of plaintiff's claims the Court will consider the exhibits and letters attached to Williams' Memorandum.

interests); *Lee v. Carlson,* 645 F.Supp. 1430, *aff'd,* 812 F.2d 712 (2d Cir.1987); *Ostrer v. Aronwald,* 567 F.2d 551, 553 (2d Cir.1977); *Peck v. United States,* 470 F.Supp. 1003, 1011 (S.D.N.Y.1979).

■ In this case, plaintiff has failed adequately to plead the elements of a § 1985 conspiracy. First, he does not allege that he is a member of a protected class. Next, most of his allegations of conspiracy are vague and conclusory. For example, plaintiff provides no specific factual basis for his allegation that defendants conspired together to deprive him of a benefit or right. Indeed, he alleges no specific acts by defendants Hoden, McCausland, or Thomson at all.

■ As against defendant Reilly, Williams does allege one specific act. Williams accuses him of intentionally removing documents relating to plaintiff's military record from plaintiff's personnel file in 1987. Plaintiff's letter, attached as Exhibit Y. Notably, evidence provided by plaintiff himself tends to show that Reilly was not even the DLA official who made the decision regarding Williams' security clearance. Letter from DLA to Williams, dated March 12, 1987, attached to Plaintiff's Memorandum as Exhibit V at 1. Also of significance in connection with this allegation is that Williams received his original security clearance *after* Reilly allegedly removed the personnel documents. Letter from plaintiff, attached as Exhibit Y, at 3.

Moreover, Williams does not explain how this alleged act "reasonably relate[s] to the promotion of the claimed conspiracy," i.e., the denial of his security clearance. *Powell v. Workmen's Comp. Bd. of N.Y.,* 327 F.2d 131, 137 (2d Cir.1964). This single overt act, tenuously related to the aim of the alleged conspiracy, is insufficient to make out a claim under § 1985(3). Thus,

Williams' conspiracy allegations fail to state a claim under § 1985 in several respects.

■ A § 1981 claim is also unavailable to the plaintiff. The exclusive remedy for racial discrimination in federal employment is provided for by Title VII of the Civil Rights Act of 1964. *Brown v. General Services Administration,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 197 (2d Cir.1985). Under this statute, plaintiff must exhaust his administrative remedies prior to seeking relief in the federal courts. 42 U.S.C. § 2000e–16(c). Because there is no evidence that plaintiff has exhausted his remedies before the EEOC,[5] any claims of racial discrimination that may be inferred from the complaint cannot be heard by this Court.[6] *Hall v. New York State Dept. of Environmental Conservation,* 726 F.Supp. 386, 387 (N.D.N.Y.1989); *Sheehan v. Purolator Courier Corp.,* 676 F.2d 877, 881 (2d Cir.1981).

## C. Ninth Amendment

In the absence of any other applicable constitutional provisions, Williams seeks assistance from the Ninth Amendment. Plaintiff argues that "[t]he right to pursue upward mobility in the workplace is something taken for granted by most Americans," and that for him such upward mobility is contingent upon his maintaining his security clearance. This argument has no precedent in Ninth Amendment jurisprudence. In light of the special nature of a security clearance and its relation to the interests of national security, this Court declines to use this case to make new forays into the interpretation of unenumerated rights.

---

**5.** Williams' numerous exhibits do not include a "Right-to-Sue" letter from the EEOC.

**6.** Notwithstanding the plaintiff's failure to exhaust his Title VII remedies, this Court might have had jurisdiction under its limited equity powers to issue a temporary injunction against an employer to maintain the status quo pending an action by the EEOC. *Sheehan v. Purolator*

*Courier Corp.,* 676 F.2d 877, 887 (2d Cir.1981); *Stewart, supra,* 762 F.2d at 198. Without citing this authority, Williams requested preliminary injunctive relief from this Court. However, because of the unlikelihood that the plaintiff would prevail on the merits, *supra,* the Court would find this exceptional relief inappropriate.

### III. Statutory Violations

#### A. Privacy Act

█ In addition to his constitutional complaints, plaintiff also contends that his statutory right to privacy was violated by communication between NIS and DLA over the marijuana incident. Plaintiff basically argues that it was improper for NIS to inform DLA of the marijuana incident and plaintiff's alleged admissions made during that investigation.

The Privacy Act and DLA regulations prohibit any unauthorized disclosure of personnel records to the public or another agency. *See* 32 C.F.R. 1286.5(f); 32 C.F.R. 701.105(b)(3). Plaintiff's reliance on these protections is misplaced, however, because they protect against *inter*-agency, not *intra*-agency, disclosures. For purposes of the Privacy Act, NIS and DLA are considered components of one agency, the Department of Defense.

Chapter XII of the Department of Defense Section of the Code of Federal Regulations delineates the responsibilities and function of DLA. That section states in relevant part:

> (b) Agency. For the purpose of disclosing records subject to the Privacy Act among Department of Defense components, the Department of Defense is considered a single agency.

32 C.F.R. 1286.3(b). Similarly, regulations on the record-keeping duties of NIS state that:

> "[d]isclosure [of personnel records] may be made to personnel of the Department of the Navy or other components of the Department of Defense (DOD) ... who have a need for the record in the performance of their duties, provided that this use is compatible with the purpose for which the record is maintained. This provision is based on the "need to know" concept....
>
> Examples of personnel outside the Navy who may be included are: ... Defense Investigative Service."

32 C.F.R. 701.2105. Accordingly, any information shared between NIS and DLA was not subject to the requirements of the Privacy Act. NIS had full authority to inform DLA officials that plaintiff had been the subject of an investigation into possession of marijuana and that plaintiff revealed illicit drug use to Naval authorities. Such intra-agency communication is not prohibited by the Privacy Act nor the relevant provisions of the Code of Federal Regulations.

Plaintiff also argues that the Privacy Act protects him from the loss of his security clearance due to his failure to complete Form 398. Plaintiff bases this claim on the fact that the form is described as "voluntary" by Privacy Act regulations. In making this argument, plaintiff misunderstands the voluntary nature of the form. By its own terms, it is voluntary because there is no sanction for not completing it. The DLA's subsequent denial of a security clearance is not a sanction by the Government, but rather a forfeiture by Williams of a benefit. As discussed *supra*, there is neither statutory nor constitutional support for the view that a security clearance is an entitlement.

#### B. Freedom of Information Act

█ Plaintiff also claims that defendants violated the Freedom of Information Act. After diligent effort, the Court is unable to apprehend the nature of this claim. The Act pertains to requests for documents made by the public. *See* 5 U.S.C. § 552(a). It requires that most Government documents be subject to examination by outside individuals upon request. Plaintiff's complaint does not indicate that he attempted to obtain access to Government documents, which access he was then denied. Moreover, the kinds of complaints that plaintiff does lodge against these defendants do not seem to relate to the provisions of this Act.

Williams has not presented this Court with any basis for finding either a constitutional deprivation or a statutory violation.

### IV. Sovereign Immunity

█ A further obstacle to plaintiff's claims is the doctrine of sovereign immunity. As noted by defendants, even if plain-

tiff did have a viable statutory or constitutional claim based on the acts of DLA officials, it would be foreclosed because of the qualified good faith immunity enjoyed by federal officials when exercising their discretionary powers.

Recognizing the "substantial costs attend[ing] the litigation of the subjective good faith of government officials," the Supreme Court articulated policy severely limiting the circumstances under which plaintiffs may bring a claim against government officials performing discretionary functions:

> [G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights for which a reasonable person would have known.

*Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). Here, plaintiff relies exclusively on alleged statutory violations to provide the necessary misconduct. *See* Plaintiff's Memorandum at 4–9. There can be no denial of "clearly established statutory or constitutional rights" because, as discussed *supra,* no due process deprivations or statutory violations were properly pleaded by the complaint. Since there is no apparent unlawfulness, these officials would be immune from any suit based on the acts alleged in the complaint.

### CONCLUSION

For the reasons stated above, defendants' motion to dismiss is granted. Plaintiff's complaint is hereby dismissed in its entirety.

This dismissal is an addendum to the Court's previous dismissal of the case with prejudice, dated January 19, 1990, as subsequently reopened for fuller explanation at plaintiff's request. The Judgment Clerk should enter this final judgment forthwith.

SO ORDERED.