Miles V. WILLIAMS, Plaintiff,

v.

Lt. General Charles McCAUSLAND, June Gibbs Brown, William Stokes, Edward Bridges, Kenneth H. Abrams, Colonel Ross M. Dempsey, Jr., USA, Brig. General John M. Thomson, Defendants.

Miles V. WILLIAMS, Plaintiff,

v.

Lt. General Charles McCAUSLAND, June Gibbs Brown, Stephen A. Whitlock, Mary F. Wieseman, William E. Reukauf, Constance Berry Newman, Richard D. Komer, Sean P. Walsh, Michael W. Crum, Daniel R. Levinson, Lawrence Baum, Edward Bridges, Kenneth H. Abrams, Colonel Ross M. Dempsey, Jr., USA, Brig. General John M. Thomson, Defendants.

Nos. 90 Civ. 7563 (RWS), 91 Civ. 7281 (RWS).

United States District Court, S.D. New York.

April 27, 1992.

Miles V. Williams, pro se.

Otto G. Obermaier, U.S. Atty. S.D.N.Y. (Robert W. Sadowski, Asst. U.S. Atty., of counsel), New York City, for defendants.

## OPINION

SWEET, District Judge.

Plaintiff *pro se* Miles Williams ("Williams") has brought these actions against numerous defendants, described in further detail herein, seeking injunctive and monetary relief for alleged deprivations of his Fifth Amendment right to due process and for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c); the Civil Service Reform Act, 5 U.S.C. §§ 1101 *et seq.;* the Privacy Act, 5 U.S.C. §§ 552a, and various privacy regulations applicable to the Defense Logistics Agency contained in Title 32 of the Code of Federal Regulations ("C.F.R."); the Inspector General Act, 5 U.S.C.App. 3 § 1 *et seq.* and 5 C.F.R. § 1209.4(b)(2); the Freedom of Information Act, 5 U.S.C. § 552; the Lloyd–LaFollette Act, 5 U.S.C. §§ 7101 *et seq.;* 18 U.S.C. § 1001; and the Whistleblower Protection Act.

The defendants in *Williams v. McCausland,* No. 90 Civ. 7563 (RWS) (*"Williams II"* and the *"Williams II* Defendants") have moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. as to all of the claims against them except the Title VII claims against defendant Lt. General Charles McCausland.[1] The defendants in *Williams v. McCausland,* No. 91 Civ. 7281 (RWS) (*"Williams III"* and the *"Williams III* Defendants") have moved pursuant to Rule 12(b)(6), Fed.R.Civ.P. to dismiss all claims against them except for the Title VII claims against Lt. General Charles McCausland. For the following

reasons, the motions in both cases are granted in part and denied in part.

*The Parties*

Plaintiff *pro se* Miles Williams ("Williams") is a black male who at all times relevant to these actions was a resident of New York City, New York. Williams formerly was employed by the Defense Contract Administrative Services Region—New York ("DCASR–NY"), a subdivision of the Defense Logistics Agency ("DLA"), which provides support services for the Department of Defense ("DOD"). At the time of the events at issue in *Williams II* and *Williams III,* Williams was a GS–11 Contract Price/Cost Analyst in the Financial Services Branch of the Defense Contract Administration Management Area—New York ("DCASMA–NY"), a subdivision of DCASR–NY.

The *Williams II* Defendants consist of the following individuals:

Lieutenant General Charles McCausland ("General McCausland") is the Director of the DLA. June Gibbs Brown ("Brown") is the Inspector General of the DOD. William Stokes ("Stokes") was Acting Chief of the Financial Services Branch, DCASMA—NY and Williams's immediate supervisor at the time of the events alleged in the Complaint in *Williams II.* Edward Bridges ("Bridges") was the Chief of the Contract Management Division of the DCASMA—NY. Kenneth H. Abrams ("Abrams") was the Deputy Commander of DCASMA—NY at the time of the events alleged in the complaint in *Williams II.* Colonel Ross Dempsey ("Dempsey") was the Commander of DCASMA—NY. Brigadier General John M. Thomson ("Thomson") was the Commander of DCASR—NY at the time of the events alleged in the complaint.

The *Williams III* Defendants consist of the following individuals:

*Williams II* Defendants General McCausland, Brown, Bridges, Abrams, Dempsey and Thomson are also named as defendants in *Williams III.* Stephen A. Whitlock ("Whitlock") is the Appellate Re-

---

**1.** *Williams I,* No. 89 Civ. 3924 (RWS), a prior, related action, is described in further detail be-

low.

view Authority for the Freedom of Information Act & Privacy Act Division of the DOD Inspector General's Office. William E. Reukauf ("Reukauf") is Associate Special Counsel for Prosecution. Constance Berry Newman ("Newman") is Director of the Office of Personnel Management ("OPM"). Richard D. Komer ("Komer") is Counsel for the Equal Employment Opportunity Commission ("EEOC"). Sean P. Walsh ("Walsh") is the New York Regional Executive Director of the Merit Systems Protection Board ("MSPB"). Daniel R. Levinson ("Levinson") is Executive Director of the MSPB. Lawrence Baum ("Baum") is Chief of the Financial Services Branch, DCASMA–NY and was Williams's immediate supervisor at the time of the events alleged in the complaint in *Williams III*. Mary F. Wieseman ("Wieseman") is Special Counsel in the Office of Special Counsel ("OSC"). Michael W. Crum ("Crum") is Deputy Executive Director of the MSPB.

## Prior Proceedings

On June 6, 1989 Williams filed an action in this court charging that General McCausland had violated Title VII when Williams was denied a promotion to a GS–12 Contract Price/Cost Analyst position at the DLA, allegedly because of his race. *See* No. 89 Civ. 3924 (RWS) ("*Williams I*"). On February 3, 1992, following a bench trial, this court dismissed the complaint, concluding that Williams had failed to establish that he was denied the promotion because of his race. 782 F.Supp. 272 (S.D.N.Y.1992).

The complaint in *Williams II* was filed on November 26, 1990. On March 8, 1991, the *Williams II* Defendants filed an answer. The present motion for judgment on the pleadings was filed on December 10, 1991 and was considered fully submitted as of January 24, 1992.

The complaint in *Williams III* was filed on October 28, 1991. The *Williams III* Defendants have not yet filed an answer. The present motion to dismiss was filed on January 16, 1992. Like the motion in *Williams II*, the motion was considered fully submitted as of January 24, 1992.

## The Facts

### Williams II

The gravamen of the complaint in *Williams II* is that Williams was wrongfully suspended from his position at the DCASMA–NY as a result of racial discrimination and reprisal for filing previous complaints and "whistleblowing." According to the complaint in *Williams II* and the exhibits annexed thereto, on August 11, 1989, Williams was issued a "Notice of Proposed Suspension," written by Bridges, advising him that it was proposed to suspend him from duty and pay for ten days for "Insubordination and Use of Abusive or Offensive Language." *Williams II* Complaint Ex. 2 (hereinafter "Comp. II"). According to this letter, on July 27, 1989, Williams had refused an assignment from Stokes, then his supervisor, and had used abusive or offensive language toward Stokes from July 27 to July 31, 1989. Williams was advised of his right to reply to Abrams within fourteen days after receipt of the Proposed Suspension. *Id.* Williams responded by letter dated August 11, 1989. *Id.* Ex. 3. On September 7, 1989, Abrams, then Deputy Commander of DCASMA–NY, notified Williams that a decision had been made to suspend him for ten days effective September 11, 1989. *Id.* Ex. 5.

The complaint in *Williams II* alleges that the suspension was not due to the reasons stated but rather was the result of racial discrimination and reprisal for (1) filing a previous EEO complaint culminating in the district court action in *Williams I*, (2) for filing an MSPB complaint on behalf of a co-worker on July 27, 1989 alleging racial discrimination and prohibited personnel practices, and (3) for writing letters on July 31, 1989 and August 11, 1989 "blowing the whistle" on Bridges and Stokes, Comp. I Exs. 1 and 3.

Based on these contentions, after being advised of the suspension, Williams filed a preliminary complaint with the DLA Director of Equal Employment Opportunity ("EEO") *Id.* Ex. 6. On October 2, 1989, Williams filed a formal complaint alleging

racial discrimination and reprisal for filing a previous complaint, with the DLA's Director of EEO. *Id.* Ex. 8. On October 6, 1989, Williams sought relief from the Office of Special Counsel ("OSC"), which he followed up by letters dated October 11 and 21, 1989. *Id.* Exs. 9–11. Although the complaint is rather confusing as to the involvement of the Inspector General's Office, apparently Williams also filed a Defense Hotline Complaint there. *See id.* ¶ 20, Ex. 7.

Following an adverse determination by the DLA EEO, Williams appealed to the Office of Review and Appeals ("ORA") of the Equal Employment Opportunity Commission ("EEOC") which affirmed the findings and decision in all respects on May 25, 1990. *Id.* Ex. 44. In the interim, Williams amended his complaint, charging that during the appeals process, the DLA had disclosed information to the ORA in support of its position in violation of the Privacy Act and numerous privacy regulations applying to the DLA.

### Williams III

On December 16, 1989, Williams was removed from his position with the DLA for insubordination and disruptive conduct. Williams appealed his removal to the MSPB alleging racial discrimination and reprisal for "whistleblowing" activities. The MSPB upheld Williams's removal. During the MSPB proceedings, Williams made multiple requests for information and filed numerous documents regarding his challenge to his removal from the DLA. The complaint in *Williams III* alleges that he was dismissed because of racial discrimination and reprisal for whistleblowing.

2. The *Williams II* Defendants have moved for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P. Federal Rule of Civil Procedure 12(h)(2) provides that the defense of failure to state a cause of action upon which relief can be granted may be raised on a motion for judgment on the pleadings. The court will apply the same standards for granting the appropriate relief as it would have employed had the motion been brought under Rule 12(b)(6).

3. The complaint in *Williams II* alleges a Title VII claim against only General McCausland, in his official capacity. The complaint in *Williams III* alleges a Title VII claim against General McCausland, Brown, Wieseman and Newman.

### Discussion

In considering a motion to dismiss for failure to state a claim,[2] a complaint will be dismissed only if it appears beyond doubt that the plaintiff can prove no set of facts supporting his claim that would entitle him to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984). The court will construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). In particular, *pro se* complaints must be read closely and must be construed liberally to permit any possible valid claim. *Williams v. Reilly*, 743 F.Supp. 168, 170 (S.D.N.Y. 1990).

Rather than clearly setting forth Williams's claims and the bases therefor, each of the complaints rattles off a long series of statutes that the *Williams II* and *Williams III* Defendants allegedly violated and then gives a chronological account of the events and paper flow which presumably are to be pasted together to state causes of action under these statutes. Specifically, the complaints charge violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000–16(c),[3] the Civil Service Reform Act ("CSRA"), 5 U.S.C. §§ 1101 *et seq.*,[4] the Privacy Act of 1974, 5 U.S.C. § 552a and various privacy regulations applicable to the DLA, 32 C.F.R. §§ 1286.2(d), 1286.2(h), 1286.2(j), 1286.2(k), 1286.4(b)(1), 1286.4(b)(3),[5] the In-

4. The complaint in *Williams II* alleges violations of the CSRA by General McCausland and Thomson. The complaint in *Williams III* alleges such violations by General McCausland, Wieseman, Newman and Thomson.

5. In *Williams II*, these claims relate to McCausland (32 C.F.R. §§ 1286.2(h), 1286.4(b)(1) and 1286.4(b)(3)), Stokes (32 C.F.R. §§ 1286.2(d), 1286.2(j), 1286.2(k), and 1286.4(b)(1)), Bridges (32 C.F.R. §§ 1286.2(d), 1286.2(h), 1286.2(k), 1286.4(b)(1), and 1286.4(b)(3)), Abrams (32 C.F.R. §§ 1286.2(d), 1286.2(h), 1286.2(k), 1286.-4(b)(1), and 1286.4(b)(3)), Dempsey (32 C.F.R. §§ 1286.2(d), 1286.2(h), 1286.2(k), 1286.4(b)(1),

spector General Act, 5 U.S.C.App. 3 § 1 *et seq.* and 5 C.F.R. § 1209.4(b)(2),[6] the Freedom of Information Act, 5 U.S.C. § 552,[7] the Lloyd–LaFollette Act, 5 U.S.C. § 7101 *et seq.* and 18 U.S.C. § 1001.[8] Both complaints also allege violations of the Fifth Amendment right to fair notice and an opportunity to be heard.[9]

*Title VII Claims*

■ The present motions do not seek dismissal of the Title VII claims against General McCausland, who is the only *Williams II* Defendant against whom those claims are alleged. In addition to General McCausland, the complaint in *Williams III* also alleges violations of Title VII by Brown, Wieseman and Newman for "complicity in violating the Civil Rights Act of 1964 by allowing the reprisal of removal to occur," *Williams III* Complaint ¶¶ 3, 5 (hereinafter "Comp. III"). However, these parties may not properly be named as defendants to Williams's Title VII claims. Section 2000e–16(c) of Title 42 of the United States Code provides that, in actions by

employees or applicants for employment by federal entities for discrimination based on race, color, sex or national origin, "the *head of the department*, agency, or unit, as appropriate, *shall be defendant.*" Thus, General McCausland, who is the Director of the DLA, is the only proper defendant to the Title VII claims. The Title VII claims against Brown, Wieseman and Newman are dismissed.

*CSRA Claims*

The complaints assert claims for violations of the CSRA, specifically of §§ 2302(c) and 7513(e), by General McCausland, Abrams, Thomson and Newman. Presumably, the substance of the allegations underlying these claims is that these defendants violated the CSRA by engaging in "prohibited personnel practices," namely, discriminating on the basis of race and taking adverse action against Williams as reprisal for filing previous EEO complaints and for "whistleblowing." [10]

and 1286.4(b)(3)) and Thomson. In *Williams III*, Privacy Act claims are made against General McCausland (32 C.F.R. §§ 1286.4(b)(1), 1286.4(b)(3)), Walsh (5 U.S.C. § 552a), Crum (same), Levinson (same), Thomson (32 C.F.R. §§ 1286.2(d), 1286.4(b)(1), 1286.4(b)(3)), Baum (32 C.F.R. §§ 1286.2(d), 1286.2(h), 1286.2(j), 1286.2(k), 1286.2(*l*); 1286.4(b)(1), 1286.4(b)(3)), Bridges (same), Abrams (same) and Dempsey (same).

**6.** This claim, alleged in both complaints, relates only to Brown.

**7.** The complaint in *Williams III* alleges FOIA claims against General McCausland, Whitlock, Reukauf and Komer.

**8.** This claim relates only to Walsh.

**9.** This claim is made against Stokes, Bridges, Abrams and Dempsey in the *Williams II* complaint and against Baum, Bridges, Abrams and Dempsey in the *Williams III* complaint.

**10.** Among the "prohibited personnel practices" enumerated in 5 U.S.C. § 2302 are racial discrimination and reprisal. The section provides, in relevant part, that
(b) Any employee who has authority to take, direct others to take, recommend, or approve any personnel action, shall not, with respect to such authority—
(1) discriminate for or against any employee or applicant for employment—

(A) on the basis of race, color, religion, sex, or national origin, as prohibited under ... section 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e–16); ...
(8) take or fail to take, or threaten to take or fail to take, a personnel action with respect to an employee or applicant for employment because of—
(A) any disclosure of information by an employee or applicant which the employee or applicant reasonably believed evidences— ...
(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety, ...
(B) any disclosure to the Special Counsel of the Merit Systems Protection Board, or to the Inspector General of an agency or another employee designated by the head of the agency to receive such disclosures, of information which the employee or applicant reasonably believes evidences— ...
(ii) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health and safety; ...
(9) take or fail to take, or threaten to take or fail to take, any personnel action against any employee or applicant because of—
(A) the exercise of any appeal, complaint, or grievance right granted by any law, rule, or regulation;
(B) testifying for or otherwise lawfully assisting any individual in the exercise of any right referred to in subparagraph (A)....

■ Williams may not assert CSRA claims for racial discrimination in district court. Under the CSRA, while appeals of decisions of the MSPB in actions allegedly involving racial discrimination are judicially reviewable, *see* 5 U.S.C. § 7702(a)(2), "[c]ases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) or the Civil Rights Act of 1964 (42 U.S.C. § 2000e–16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 ..., and section 16(b) of the Fair Labor Standards Act of 1938...." *See also Brown v. General Servs. Admin.*, 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976); *Stewart v. United States I.N.S.*, 762 F.2d 193, 198 (2d Cir.1985); *Williams*, 743 F.Supp. at 174 ("The exclusive remedy for racial discrimination in federal employment is provided for by Title VII of the Civil Rights Act of 1964."). Thus, the Title VII claims against McCausland constitute Williams's sole avenue of redress for the alleged racial discrimination.

■ As for the reprisal component of the CSRA claims, "[o]rdinarily, petitions for judicial review of MSPB action are filed in the Court of Appeals for the Federal Circuit," and review by the district court is not available. *Romain v. Shear*, 799 F.2d 1416, 1421 (9th Cir.1986), *cert. denied*, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987); *see* 5 U.S.C. § 7703(b)(1). Nevertheless, "[w]here a claim of discrimination is coupled with a nondiscrimination claim, ... the entire 'mixed case' is filed in the district court." *Id.* The discrimination claim is reviewed *de novo*, while the nondiscrimination claim is reviewed on the administrative record only. 5 U.S.C. § 7703(c)(1)–(3).

■ Because such a coupling exists in the two cases presently under consideration, review by this court of the MSPB action and underlying personnel decisions relating to the nondiscrimination claims is proper in conjunction with the Title VII claims. However, only McCausland, named in his official capacity as Director of the DLA, is a proper defendant to these claims. *See* 5 U.S.C. § 7703(a)(2) (either the MSPB or the "agency responsible for taking personnel action shall be respondent."). Therefore, the CSRA claims against Abrams, Thomson and Newman are dismissed.

### Fifth Amendment Claims

The complaints allege that the actions of Stokes, Bridges, Abrams and Dempsey in suspending Williams and of Baum, Bridges, Abrams and Dempsey in removing him from his position violated his Fifth Amendment right to due process by depriving him of "fair notice and an opportunity to be heard." It is unclear whether these so-called "Bivens claims" allege that Williams was denied procedural due process or whether the alleged discriminatory nature of the suspension and dismissal violated his right to equal protection under the due process clause of the Fifth Amendment. Read either way, however, these claims are dismissed for the following reasons.

In *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court held that an action for damages may be maintained against a federal agent who "acting under color of his authority" engages in unconstitutional conduct. At issue in *Bivens* was conduct in violation of the Fourth Amendment. The Supreme Court has held that *Bivens* actions are available to allow a damage remedy under the equal protection component of the Fifth Amendment's due process clause. *Davis v. Passman*, 442 U.S. 228, 244, 99 S.Ct. 2264, 2276–77, 60 L.Ed.2d 846 (1979).

■ A *Bivens* remedy is not available where there is an "explicit congressional declaration that persons injured by a federal officer's violation of the [constitutional] Amendment may not recover money damages from the agents but must instead be remitted to another remedy, equally effective in the view of Congress," *id.* 403 U.S. at 397, 91 S.Ct. at 2005, or where there are "special factors counselling hesitation in the absence of affirmative action by Congress," *id.* at 396, 91 S.Ct. at 2005; *see also Schweiker v. Chilicky*, 487 U.S. 412, 423,

108 S.Ct. 2460, 2467–68, 101 L.Ed.2d 370 (1988). Such special factors exist where "the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration." *Chilicky*, 487 U.S. at 423, 108 S.Ct. at 2468.

In *Bush v. Lucas*, 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), the Supreme Court held that Congress had provided such adequate remedial mechanisms for redressing constitutional violations in the federal employment relationship. The Court thus declined to create a *Bivens* remedy for a federal employee whose First Amendment rights were violated by his superiors when they demoted him for making public statements that were highly critical of the agency by which he was employed. The Court found that the CSRA "provides meaningful remedies for employees who may have been unfairly disciplined for making critical comments about their agencies," *id.* at 368, 103 S.Ct. at 2406, and concluded that "[b]ecause such claims arise out of an employment relationship that is governed by comprehensive procedural and substantive provisions giving meaningful remedies against the United States, ... it would be inappropriate for us to supplement that regulatory scheme with a new judicial remedy." *Id.; see also Petrini v. Howard*, 918 F.2d 1482, 1484 (10th Cir. 1990); *Hill v. Department of Air Force*, 884 F.2d 1318, 1320–21 (10th Cir.1989), *cert. denied sub nom. Hill v. Britt*, 495 U.S. 947, 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990).

■ The CSRA provides a remedy for Williams's Fifth Amendment claims. The statute expressly recognizes a remedy for constitutional challenges by job applicants. *See* 5 U.S.C. §§ 2301(b)(2) ("Federal personnel management should be implemented consistent with the following merit system principles: ... All employees and applicants for employment should receive fair and equitable treatment in all aspects of personnel management without regard to political affiliation, race, color, religion, national origin, sex, marital status, age, or handicapping condition, and *with proper regard for their privacy and constitutional rights.*" (emphasis added)); *see also Barhorst v. Marsh*, 765 F.Supp. 995, 998 (E.D.Mo.1991) (no *Bivens* action available where federal employee challenged adverse personnel action as violative of right to due process). To the extent that Williams's Fifth Amendment claims are based on his allegations that he was suspended and removed as a result of racial discrimination or reprisal, these are "prohibited personnel practices" for which the CSRA explicitly provides remedial mechanisms. *See* 5 U.S.C. §§ 2302(b)(1), (b)(8) and (b)(9).

■ To the extent that these claims challenge the process Williams received, as with the racial discrimination and reprisal component, the CSRA precludes a *Bivens* remedy for this claim because its remedial scheme clearly recognizes a remedy for violations of constitutional rights. Thus, there is no *Bivens* remedy even though this is not explicitly enumerated as a "prohibited personnel practice" under 5 U.S.C. § 2302. *See Hill*, 884 F.2d at 1321 (no *Bivens* remedy even though violation of right to privacy not an allegation of prohibited personnel practice; factor of federal employment, not nature of alleged constitutional violation relevant). Finally, even if this cause of action were available to Williams here, the complaints do not allege any facts that suggest that any of the defendants against whom these claims are made acted outside statutory procedures, the constitutionality of which Williams has not challenged.[11]

---

**11.** The CSRA procedures relevant to suspension and removal are codified at 5 U.S.C. §§ 7503 and 7513.

Section 7503(b), applicable where an employee is suspended for 14 days or less, provides that the employee is entitled to

(1) an advance written notice stating the specific reasons for the proposed action;

(2) a reasonable time to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

*Privacy Act Claims*

The apparent bases of the Privacy Act claims asserted in *Williams II* and *Williams III* are that Williams was not provided with documents relating to the administrative investigation involving his suspension and termination, that personal documents and information were disclosed during the appeal proceedings, and that documents collected during the investigations were inaccurate.

The Privacy Act, 5 U.S.C. § 552a, provides that a civil cause of action for damages is available when an agency fails to comply with an individual's request for access to his record or information pertaining to him or fails to maintain accurate records concerning the individual that results in a determination adverse to that individual. 5 U.S.C. § 552a(g)(1). The C.F.R. regulations cited by Williams state the DLA's policy to implement procedures in accordance with the Privacy Act. *See* 32 C.F.R. §§ 1286.2(d) (accuracy, completeness, etc.), 1286.2(h) (security of individual records), 1286.2(j), (k) (access to records pertaining to individual), 1286.2(*l*) (accounting of all disclosures pertaining to individual), 1286.-4(b)(1) (heads of DLA Primary Level Field Activities will ensure compliance with regulations) and 1286.4(b)(3) (heads of DLA Primary Level Field Activities will ensure that internal procedures of DLA provide for compliance with Privacy Act.).

■ Although Williams's Privacy Act claims therefore relate to those subjects

covered by the Act and DLA regulations, they must be dismissed because none of the defendants against whom he asserts these claims can be sued for such violations. The Privacy Act authorizes suits only against "agencies" and not individuals. 5 U.S.C. § 552a(g)(1) ("the individual may bring a civil action *against the agency* ....."); *Reyes v. Supervisor of Drug Enforcement Admin.*, 834 F.2d 1093, 1097 (1st Cir.1987) (in action below, head of U.S. Attorneys Office successfully defended against Privacy Act claim on this basis); *Schowengerdt v. General Dynamics Corp.*, 823 F.2d 1328, 1340 (9th Cir.1987) (agency is only proper party to Privacy Act suit; civil remedy provisions not applicable to individual defendants); *Brown–Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983). An "agency" "includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of Government ... or any independent regulatory agency." 5 U.S.C. § 552(f). The term does not include individual officers or employees of an agency. *Gonzalez v. Leonard*, 497 F.Supp. 1058, 1075 (D.Conn.1980). Thus, the Privacy Act claims in *Williams I* and *Williams II* are dismissed.

*Freedom of Information Act Claims*

The FOIA claims asserted in *Williams III* apparently relate to Williams's requests during the MSPB proceedings for doc-

---

Section 7513(b), applicable where an employee is removed from his position, provides that the employee *is entitled to*

(1) at least 30 days' advance written notice, unless there is reasonable cause to believe the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

An employee against whom action is taken under § 7513 may appeal to the MSPB under 5 U.S.C. § 7701.

The complaint in *Williams II* establishes that Williams received notice of the proposed suspension on August 11, 1989, in which he was advised of his right to reply within 14 days. Comp. I Ex. 2. Williams replied by letter dated August 11, 1989. *Id.* Ex. 3. The decision to suspend Williams was not rendered until September 7, 1989, *id.* Ex. 5, and this decision and the reasons therefor were provided to Williams in writing. *Id.* The complaint makes no allegation that Williams ever sought to be represented by counsel. Thus, on the face of the complaint, the defendants charged with violation of the Fifth Amendment followed applicable procedures.

The complaint in *Williams III* makes no reference whatsoever to the removal process prior to the MSPB appeal and therefore provides no basis for finding a deprivation of due process, even if the remedy were available.

uments from the DLA, the DOD Inspector General, the OPM, the EEOC and the MSPB.

■ Williams's FOIA claims against these defendants are dismissed. The FOIA authorizes claims against federal agencies, not individuals. *See Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir.1987); *Parks v. United States I.R.S.*, 618 F.2d 677, 684 (10th Cir.1980); *Times Newspapers of Great Britain, Inc. v. C.I.A.*, 539 F.Supp. 678, 685–86 (S.D.N.Y.1982).

### Inspector General Act Claims

Under the Inspector General Act, the Inspector General "may receive and investigate complaints of information from an employee of the establishment concerning the possible existence of an activity constituting a violation of law, rules, or regulations, or mismanagement, gross waste of funds, abuse of authority or a substantial and specific danger to the public health and safety." 5 U.S.C.App. 3 § 7(a). The gravamen of the claims against Brown under the Inspector General Act is that she failed to attempt to prevent the suspension and removal that allegedly resulted from reprisal.

■ However, Brown is immune from claims that she violated the Inspector General Act under the doctrine of sovereign immunity. Under this doctrine, the United States may not be sued for damages without its consent. *Malone v. Bowdoin*, 369 U.S. 643, 82 S.Ct. 980, 8 L.Ed.2d 168 (1962). The doctrine also bars suit against an officer of the United States when relief against that officer would be obtained against the United States. *See Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 688, 69 S.Ct. 1457, 1460–61, 93 L.Ed. 1628 (1949). Thus, absent an "unequivocal" waiver of sovereign immunity, the United States is immune from lawsuits. *United States Dep't of Energy v. Ohio*, —— U.S. ——, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992); *United States v. Nordic Village, Inc.*, —— U.S. ——, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992); *United States v. Mitchell*, 445 U.S. 535, 538–89, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980).

The Inspector General Act contains no waiver of immunity, "unequivocal" or otherwise. Moreover, the complaints allege no facts suggesting that Brown acted beyond the scope of her official duties. Therefore, Brown is immune from suit for violations of the Inspector General Act, and these claims against her are dismissed.

### Claim Against Walsh Under 18 U.S.C. § 1001

■ The complaint in *Williams III* charges Walsh with violating 18 U.S.C. § 1001, a criminal statute providing in relevant part that one within the jurisdiction of any department or agency of the United States who makes false or fraudulent statements shall be fined or imprisoned. No private right of action is provided under this statute, *see Federal Sav. & Loan Ins. Corp. v. Reeves*, 816 F.2d 130, 138 (4th Cir.1987) (finding no "affirmative indication that Congress intended to furnish civil remedies"); *House v. Hastings*, No. 91 Civ. 3780 (JSM), 1992 WL 44370, at *4 n. 1, 1992 U.S. Dist. LEXIS 1951, at screen 1 n. 1 (S.D.N.Y. Jan. 29, 1992) (statute "do[es] not readily provide for a private right of action"); *Johnston v. Torres*, No. 88 Civ. 7697 (MJL), 1990 WL 195926, 1990 U.S.Dist. LEXIS 15780 (S.D.N.Y. Nov. 27, 1990), and the claim is therefore dismissed.

### Lloyd–LaFollette Claims

The Lloyd–LaFollette Act relates to labor-management and employee relations in the public and private sectors. The complaints fail to allege any facts to which this statute is relevant and thus any claims made thereunder are dismissed.

### Fees and Contempt

Williams's opposition papers request that the defendants and their attorney be held in contempt and that he be granted costs from February 1, 1991. Because there is no basis for these requests, they are denied.

### Leave to Amend the Complaint in Williams III

Williams's opposition papers in *Williams III* state that he "would like to amend his

complaint to eliminate Defendant Whitlock, Reukauf, Komer, Crum and Levinson as parties and to replace them with the Office of the Department of Defense Inspector General, Office of Special Counsel, the Equal Employment Opportunity Commission and the Merit Systems Protection Board, respectively." Williams Opp.Memo. at 4. Treating this request as a motion for leave to amend, in the absence of opposition, leave to amend the complaint in *Williams III* to this extent is granted.

*Conclusion*

For the foregoing reasons, the motion for judgment on the pleadings in *Williams II* and the motion to dismiss for failure to state a claim in *Williams III* are granted, except to the extent of the non-discrimination component of the CSRA claims against General McCausland. These claims survive in conjunction with the Title VII claims against General McCausland, which were not the subject of either motion.

It is so ordered.