**Leroy STEWART, Plaintiff-Appellee,**

v.

**UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, Defendant-Appellant.**

**No. 649, Docket 84–6296.**

United States Court of Appeals, Second Circuit.

Argued Feb. 4, 1985.

Decided May 13, 1985.

Joseph Fleming, New York City, for plaintiff-appellee.

Franklin H. Stone, New York City (Rudolph W. Giuliani, U.S. Atty., S.D.N.Y., Jonathan A. Lindsey, Asst. U.S. Atty., New

York City, of counsel), for defendant-appellant.

Before MANSFIELD and PIERCE, Circuit Judges and BARTELS, Senior District Judge.[*]

PIERCE, Circuit Judge:

The United States Immigration and Naturalization Service ("INS") appeals from an order of the United States District Court for the Southern District of New York, Whitman Knapp, *Judge*, entered July 31, 1984, granting, in part, the motion of Leroy Stewart, an INS employee, for a preliminary injunction and directing it to pay Stewart his base salary pending the outcome of criminal proceedings against him. 591 F.Supp. 576.

INS argues that the district court lacked jurisdiction over appellee's claim of retaliatory discrimination and therefore was precluded from granting preliminary injunctive relief to appellee. In addition, INS contends that the district court erred in finding that Stewart had made an adequate showing that he would be irreparably harmed if a preliminary injunction were denied.

Stewart maintains that, pursuant to *Holt v. Continental Group, Inc.*, 708 F.2d 87 (2d Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984) and *Sheehan v. Purolator Courier Corp.*, 676 F.2d 877 (2d Cir.1981), his claim relating to his suspension without pay was properly before the district court. He also contends that the district court correctly found the existence of irreparable harm sufficient to justify the granting of a preliminary injunction in a government employee discharge case.

We hold that the district court lacked jurisdiction over Stewart's claim relating to his suspension without pay. Moreover, even if the district court did have jurisdiction, by failing to apply the Supreme Court's holding in *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the court incorrectly found that he had suffered irreparable harm.

We therefore reverse the decision of the district court.

BACKGROUND

In May, 1973, Stewart began working for the INS and in August, 1976, he assumed a position as an inspector. On November 25, 1980, Stewart and two co-workers filed an administrative complaint against the INS with the Equal Employment Opportunity Commission ("EEOC") charging the INS with discriminating against them on the basis of color and national origin. They claimed that they were subjected to treatment and employment conditions and requirements that differed from those of their Caucasian co-workers, and that they were given performance ratings lower than the ratings given to their Caucasian co-workers, despite allegedly comparable performance and productivity. They also alleged that they were harassed by their superiors at the INS.

On October 5, 1983, there having been no action on his EEOC complaint alleging discrimination, Stewart and his co-workers commenced an action against the INS in the Southern District of New York. The complaint alleged discrimination on the basis of race and national origin in violation of title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* The complaint, generally tracking the charges made at EEOC, was limited to claims that the plaintiffs, unlike their Caucasian co-workers, had been assigned to undersirable work shifts, workplaces, and working hours, had been denied upgrading and promotion opportunities, had consistently and arbitrarily been given lower performance ratings and had been subjected to continuous harassment by their superiors. They sought an award of back pay, an upgrading of their employment status, and costs and attorneys' fees. Stewart and his co-plain-

---

[*] The Honorable John R. Bartels, Senior District Judge, Eastern District of New York, sitting by designation.

tiffs alleged that they had satisfied all conditions precedent to jurisdiction under section 706 of title VII, 42 U.S.C. § 2000e–5(f)(3).

In the meantime, on August 20, 1983, Stewart was arrested for conduct involving the use of his gun while off duty.[1] According to Stewart, on the evening of August 20, 1983, he left work without removing either his uniform or his gun and stopped to purchase some items in a store. Stewart was required to wear a uniform while performing inspections and was authorized, but not required, by the INS to carry a gun during the course of his inspections. Stewart claims that, upon leaving the store, he saw several individuals smoking marijuana and taking cocaine; that he "approached the group and informed them that they were in violation of the law and that they could have been arrested for taking drugs in an open street"; that he was then beaten by the individuals, who took his wallet; that upon being approached by one of the group who was holding a knife, he took out his revolver, pursued the group which had started to escape, and, when one individual stopped and turned with what appeared to be a gun in his hand, shot the individual in the leg; and that the group then fought with Stewart and took his gun. The police arrived, the individuals pressed charges against Stewart, and Stewart was arrested.

On February 6, 1984, a grand jury directed the filing of an information charging Stewart, with regard to the incident which occurred on August 20, 1983, with reckless endangerment in the second degree and assault in the third degree, charges which could result in a term of imprisonment. On February 29, 1984, the INS placed Stewart on administrative leave with full pay. However, shortly thereafter, on March 7, 1984, the day after the information was filed, the INS notified Stewart that it proposed to suspend him from duty indefinitely without pay, pending disposition of the criminal charges against him. The INS informed Stewart of his right to respond both orally and in writing to the proposal. After considering Stewart's responses, on May 26, 1984, the INS suspended Stewart indefinitely from duty and pay, pending disposition of the criminal charges against him.

On June 14, 1984, Stewart filed a petition with the Merit Systems Protection Board ("MSPB"), appealing the suspension without pay. A hearing was scheduled for August 7, 1984.

Thereafter, on July 11, 1984, Stewart applied to Judge Knapp in the pending title VII action for the preliminary injunction at issue which he sought on the ground that the INS' placement of him on administrative leave because of the pending criminal investigation and its May 26, 1984 suspension of him without pay after the filing of the information against him were in retaliation against him for having brought the discrimination charges against it. Stewart stated that the INS had "discriminat[ed] against [him], subjecting [him] to retaliatory harrassment [sic], continuing [his] indefinite suspension without pay, or otherwise affecting [his] employment status." According to Stewart, the INS' action caused him irreparable harm by degrading and humiliating him in the eyes of his peers, family, and community, thereby damaging his reputation and self-esteem, by causing his family to suffer undue hardship, and by preventing him from providing adequate food, clothing, and shelter for his family. Stewart sought an order from the district court directing the INS to restore him to his position as an immigration inspector with full pay and benefits retroactive to May 26, 1984, the effective date of his suspension without pay.

The INS responded to Stewart's motion with several affidavits and declarations by INS supervisory personnel. According to the INS, the decision to suspend Stewart was totally nondiscriminatory and was based solely on legitimate concerns. More-

---

**1.** At the time of his arrest, Stewart's responsibilities at the INS included the inspection of seafaring vessels entering the United States and an adjudication of various applications for entry thereof into the United States.

over, the INS stated that the criminal complaint against Stewart provided evidence sufficient to form a reasonable belief that he had committed a crime for which a sentence of imprisonment could be imposed and that Stewart's alleged misconduct related directly to his employment, thereby making Stewart's suspension valid based upon section 2235 of the INS' Administrative Manual and 5 U.S.C. § 7513(a), (b). In addition, the INS enumerated other instances in which INS officers with criminal charges pending against them had been similarly suspended.

The district court found, with reference to the original administrative action filed with the EEOC against the INS in November, 1980, alleging discrimination in employment, that Stewart had exhausted his administrative remedies. In addition, the district court found that Stewart had suffered irreparable harm sufficient to justify preliminary injunctive relief, and also stated that irreparable harm might result if the INS suspension were upheld, since it could possibly have a chilling effect on the filing of complaints alleging discrimination. Finding further that Stewart had demonstrated a sufficiently serious question going to the merits to make it a fair ground for litigation, and concluding that the balance of hardships was in Stewart's favor, the district court, in an order dated July 31, 1984, granted Stewart's motion in part and ordered the INS to pay him his full salary with benefits until the criminal charges pending against him were resolved. The court did not, however, grant Stewart's motion for reinstatement.

Subsequently, on August 7, 1984, the INS appeared before the MSPB and requested that the hearing scheduled for that day be terminated. Preserving his right to refile, Stewart then moved to dismiss his MSPB appeal, which motion was granted. At some point during this sequence of events, the criminal charges against Stewart were dismissed and the INS placed Stewart back on its payroll. According to Stewart, however, the INS has instituted administrative proceedings against him not related to his arrest, but arising from the underlying incident.

DISCUSSION

*Jurisdiction*

Appellant INS maintains that the district court lacked jurisdiction to decide Stewart's motion for a preliminary injunction in that Stewart had not exhausted his administrative remedies with regard to his claim for retaliatory action.

The judicial remedy for federal employment discrimination based on race, color, or national origin is found in section 717 of title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16. *Brown v. General Services Administration*, 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976). Section 717(c) provides that a federal employee aggrieved by employment discrimination may commence a civil action in the district court only after he has first filed a claim of discrimination with his department or agency and either (1) the department or agency has taken final action on the claim or (2) if no final action has been taken, 180 days have elapsed from the filing of the claim. 42 U.S.C. § 2000e–16(c).

 Although Stewart commenced an EEOC administrative action in November, 1980 with regard to his claim of discrimination in employment, treatment, conditions, and promotion, he has never filed an administrative claim under title VII with the EEOC regarding the INS' actions after his August, 1983 arrest. According to the INS, the district court therefore lacked jurisdiction over Stewart's motion for injunctive relief.

Stewart offers two arguments in rebuttal. First, he contends that his November, 1980 complaint before the EEOC alleging discrimination in employment is a sufficient predicate for his 1984 motion in the district court to enjoin the INS from suspending him without pay because of the 1984 criminal charges against him. Stewart's argument is without merit.

This Court has held that district courts may assume jurisdiction over a claim "reasonably related" to a charge filed with the EEOC, including incidents occurring after the filing of the EEOC claim. *See Almendral v. New York State Office of Mental Health,* 743 F.2d 963, 967 (2d Cir.1984); *Kirkland v. Buffalo Board of Education,* 622 F.2d 1066, 1068 (2d Cir.1980). Herein, however, given Stewart's (1) original 1980 claim before the EEOC, (2) his 1983 complaint in the S.D.N.Y., and (3) his motion for injunctive relief, we find that Stewart's 1984 suspension based on the gun incident and indictment is not "reasonably related" to the earlier claims of discrimination with respect to promotions and upgrading. We therefore hold that the exhaustion requirements were not satisfied with respect to the 1984 suspension so that the district court lacked jurisdiction to entertain it. *See Brown,* 425 U.S. at 832–35, 96 S.Ct. at 1967–69. Indeed, the purpose of the exhaustion requirement, which is to give the administrative agency the opportunity to investigate, mediate, and take remedial action, would be defeated if we were to permit Stewart to by-pass exhaustion in the present case.

Next, Stewart argues that, even if his 1980 EEOC complaint is considered insufficient to support his motion for injunctive relief, his June 14, 1984 complaint before the MSPB should be considered sufficient administrative action pursuant to *Holt v. Continental Group, Inc.,* 708 F.2d 87 (2d Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984) and *Sheehan v. Purolator Courier Corp.,* 676 F.2d 877 (2d Cir.1981). In *Sheehan,* this Court stated that "if the court eventually will have jurisdiction of the substantive claim and an administrative tribunal has preliminary jurisdiction, the court has incidental equity jurisdiction to grant temporary relief to preserve the status quo pending the ripening of the claim for judicial action on its merits." 676 F.2d at 884. According to Stewart, since the district court herein would eventually have had jurisdiction over his MSPB complaint, the court had the power to issue the requested injunctive relief. While we agree with Stewart that he might have obtained judicial review on his MSPB complaint in the district court, we hold that the district court herein lacked jurisdiction because of Stewart's failure to follow appropriate procedures.

■ Ordinarily, an employee adversely affected by a final order or decision of the MSPB may obtain judicial review of the order or decision only in the United States Court of Appeals for the Federal Circuit. 5 U.S.C. § 7703(b)(1) (1982). Section 7703(b)(2) states, however, that in discrimination cases subject to the provisions of 5 U.S.C. § 7702, of which the present case is one, judicial review of the final MSPB order can be obtained through section 717(c) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16(c), which vests United States district courts with jurisdiction and venue. 42 U.S.C. § 2000e–5(f)(3). Therefore, since Stewart's MSPB action was still pending at the time the district court considered his motion for injunctive relief, we agree with Stewart that, had he followed appropriate procedures, the district court might have obtained jurisdiction over his MSPB complaint.

■ However, since Stewart failed to commence an action in the district court with regard to his claim of improper suspension without pay prior to filing his motion for a preliminary injunction, the district court lacked jurisdiction over Stewart's motion for injunctive relief relating to the same conduct. Only after an action has been commenced can preliminary injunctive relief be obtained. Fed.R.Civ.P. 65(a)(2) ("Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of *the action* on the merits....") (emphasis added).

■ An action is commenced in federal court by the filing with the court of a complaint. Fed.R.Civ.P. 3. Herein, Stewart filed a complaint in the district court in October, 1983, alleging discrimination in employment based on conduct of the type asserted in his 1980 EEOC claims, and

thereby commenced an action pertaining to the then alleged discriminatory conduct. His July, 1984 motion for preliminary injunctive relief, claiming discrimination and retaliation based on his suspension without pay in May, 1984, presents issues which are entirely different from those which were alleged in his original complaint. Since Stewart neither filed a separate complaint in the district court relating to his suspension without pay and based upon his MSPB action, as was done in both *Holt* and *Sheehan*, relied on by Stewart, nor sought to avail himself of the liberal rules which would have allowed for the amendment of his original October, 1983 complaint, we hold that no jurisdictional basis existed upon which the district court herein could have issued its preliminary injunctive relief. Although the filing of a complaint will not necessarily satisfy other jurisdictional requirements, it is certainly a necessary condition.

*Irreparable Harm*

■ Even if the district court had jurisdiction over Stewart's motion, we hold that the district court erred in finding that Stewart had met the requirements for a preliminary injunction.

To obtain a preliminary injunction, a plaintiff must ordinarily show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). We hold that Stewart has failed to demonstrate sufficient injury to justify a finding of irreparable harm, an absolute requirement for an award of injunctive relief. *Triebwasser & Katz v. American Telephone & Telegraph Co.,* 535 F.2d 1356, 1359 (2d Cir.1976).

"Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough" to justify injunctive relief.

*Oburn v. Shapp,* 521 F.2d 142, 151 (3d Cir.1975), *cert. denied,* 430 U.S. 968, 97 S.Ct. 1650, 52 L.Ed.2d 359 (1977) (quoting *Virginia Petroleum Jobbers Ass'n v. FPC,* 259 F.2d 921, 925 (D.C.Cir.1958)). Moreover, in *Sampson v. Murray,* 415 U.S. 61, 91–92, 94 S.Ct. 937, 953–54, 39 L.Ed.2d 166 (1974), the Supreme Court articulated a particularly stringent standard for irreparable injury in government personnel cases. The *Sampson* Court held that, except in a "genuinely extraordinary situation," irreparable harm is not shown in employee discharge cases simply by a showing of financial distress or difficulties in obtaining other employment "however severely they may affect a particular individual." *Id.* at 92 n. 68, 94 S.Ct. at 953 n. 68; *see also Levesque v. Maine,* 587 F.2d 78 (1st Cir. 1978).

Noting that *Sampson* involved lack of procedural due process and discharge in violation of Civil Service Regulations, as opposed to an action under title VII, the district court herein held that the strict standards of *Sampson* did not apply to the instant case and that irreparable injury was established herein by the alleged damage to Stewart's family relationships, his inability to support his family, and the possibility that others might be chilled in exercising their rights as a result of alleged retaliatory action.

Although the *Holt* court follows *Sampson* and suggests, in *dictum,* that there may be exceptions to the *Sampson v. Murray* rule under extraordinary circumstances, the *Holt* court clearly maintains that, even in the title VII context, without such extraordinary circumstances, "the requisite irreparable harm is not established ... by financial distress or inability to find other employment." *Holt,* 708 F.2d at 90–91 (citing *Sampson v. Murray,* 415 U.S. at 91–92 & n. 68, 94 S.Ct. at 953 & n. 68).

Herein, Stewart has plainly failed to demonstrate the existence of "extraordinary circumstances" sufficient to avoid application of the strict standards articulated in *Sampson.* According to appellee, the INS' action caused him irreparable harm by, *in-*

*ter alia,* degrading and humiliating him in the eyes of his peers, family, and community, thereby damaging his reputation and self-esteem, by causing his family to suffer undue hardship, and by preventing him from adequately providing for his family. Such unfortunate effects either alone or in combination do not constitute irreparable harm sufficient to justify injunctive relief. Concerning injury to Stewart's reputation, the *Sampson* Court stated that damage to reputation "falls far short of the type of irreparable injury which is a necessary predicate to the issuance of a temporary injunction." *Sampson,* 415 U.S. at 91–92, 94 S.Ct. at 953. With regard to the hardship imposed on Stewart's family and his inability to financially provide for them, while we concede the harm resulting to individuals in this situation, it is exactly this type of harm which the Supreme Court in *Sampson* stated would be insufficient to demonstrate the irreparable harm required for injunctive relief.

Finally, the district court herein alluded to the possibility that denying Stewart relief might produce irreparable harm by chilling future actions by other employees alleging discrimination. We acknowledge that both *Sheehan* and *Holt* do recognize this potential chilling effect as an example of an extraordinary circumstance which might constitute irreparable harm. *Holt,* 708 F.2d at 91; *Sheehan,* 676 F.2d at 885. In *Holt,* however, this Court expressly rejected the notion that a chilling effect sufficient to warrant a finding of irreparable harm presumptively exists in every employee discharge case alleging retaliation. *Id.* at 91. Rather, the *Holt* court remanded the case to the district court for an explicit determination as to whether in the particular circumstances therein, the risk of irreparable harm existed as the result of a potential chilling effect.

Based on the above, even if the district court herein had jurisdiction over Stewart's claim regarding his suspension without pay, we would conclude that the district court erred in failing to apply the *Sampson* standards. We would further conclude that if such standards had been applied, Stewart could not have been found to have

demonstrated the irreparable harm necessary for an award of injunctive relief.

For the foregoing reasons, we reverse the decision of the district court.