**LEBOEUF, LAMB, GREENE & MACRAE, LLP, Plaintiff,**

v.

**Spencer ABRAHAM, Secretary, U.S. Department of Energy, Defendant,**

and

**Winston & Strawn, Intervenor– Defendant.**

**No. Civ.A.01–269(RMU).**

United States District Court, District of Columbia.

Sept. 17, 2001.

James L. Feldesman, Feldesman, Tucker, Leifer, Fidell & Bank, LLP, Washington, DC, for Plaintiff, LeBoeuf, Lamb, Greene, & MacRae, L.L.P.

Kenneth Kessler, U.S. Department of Justice, Commercial Litigation Branch, Washington, D.C., for Defendant U.S. Department of Energy.

Thomas P. Humphrey, Crowell & Moring, LLP, Washington, DC, for Intervenor-Defendant Winston & Strawn.

### MEMORANDUM OPINION

URBINA, District Judge.

#### DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

### I. INTRODUCTION

This matter comes before the court on the plaintiff's motion for a preliminary injunction. In its motion, the law firm of LeBoeuf, Lamb, Greene & MacRae, L.L.P. ("LeBoeuf" or "the plaintiff"), claims that the U.S. Department of Energy ("DOE" or "the defendant"), is forbidding its contractors from retaining the plaintiff in connection with DOE contracts, thereby subjecting LeBoeuf to *"defacto* debarment" without notice or an opportunity to be heard. As a result, LeBoeuf seeks an injunction to stop this alleged debarment.

The plaintiff, however, followed improper procedures in pursuing its motion for injunctive relief. Rather than filing a complaint to begin this action, LeBoeuf filed its motion under an already existing civil action that it had initiated against DOE on March 27, 2000. The previous action pertains to a different contract dispute.

Because the plaintiff failed to file a complaint in this action, the court lacks jurisdiction to entertain the plaintiff's motion. The court notes that even if LeBoeuf had initiated this action by a complaint accompanying its application for injunctive relief, LeBoeuf would still fail to prevail on its preliminary-injunction claim. Accordingly, the court denies the plaintiff's motion for a preliminary injunction.

### II. BACKGROUND

The plaintiff's request for injunctive relief involves two actions: the underlying action and the action related to the motion

for injunctive relief. In both the factual history and the procedural history sections that follow, the court will describe first the underlying action and then the action related to the motion at issue.

### A. Factual History

The underlying action involves LeBoeuf's challenge to DOE's decision to award a contract to the law firm of Winston & Strawn ("Winston"), the intervenor-defendant, rather than to LeBoeuf. DOE's decision stems from a Request for Proposals and Solicitation that DOE issued on May 27, 1999. *See* First Am.Compl. ¶ 26. This request stated that DOE was seeking "professional legal advice and assistance to DOE's Office of General Counsel, involving legal matters related to the licensing activities of DOE's OCRWM [Office of Civilian Radioactive Waste Management] for Yucca Mountain," (the "Yucca Mountain contract"). *Id.* After receiving bids from LeBoeuf, Winston, and others, DOE decided to award the contract to Winston. *See id.* ¶ 36. DOE explained to LeBoeuf that although LeBoeuf and Winston had equal scores, DOE awarded the contract to Winston because Winston submitted the lowest bid. *Id.* As a result, on March 27, 2000, LeBoeuf filed a complaint against DOE in the U.S. District Court for the District of Nevada. The District of Nevada transferred the case to this court on January 3, 2001.

In contrast to the underlying dispute over the Yucca Mountain contract, the present dispute involves a contract for legal services with West Valley Nuclear Services Company ("West Valley"), a different DOE contractor. This dispute originated on June 7, 2001, with Michael McBride, a partner at LeBoeuf. *See* Second McBride

Aff. at 4. Mr. McBride learned that West Valley was interested in retaining LeBoeuf for work related to a DOE radioactive waste cleanup contract. *See id.* This contract for legal services (the "West Valley contract") required approval by DOE. *See id.* According to the plaintiff, DOE refused to approve West Valley's retention of LeBoeuf solely because of LeBoeuf's pending lawsuit against DOE. *See* Pl.'s Mot. at 1.

The plaintiff bases this conclusion on the following facts: On June 7, 2001, Mr. McBride sent a letter to West Valley's legal counsel setting forth LeBoeuf's qualifications, billing rates, and a summary of LeBoeuf's lawsuit against DOE regarding the Yucca Mountain contract. *See* Second McBride Aff., Ex. A. A few days later, West Valley informed Mr. McBride that it intended to hire LeBoeuf, subject to a few terms and DOE's approval. *See id.* On June 13 and 15, 2001, representatives from West Valley told John Lawrence, a senior counsel at LeBoeuf, that DOE was reviewing the possible "issue" posed by LeBoeuf's litigation with DOE. *See* Lawrence Aff. at 3–4. Later on June 15, 2001, Mr. Lawrence received a call from West Valley's legal counsel who, according to Mr. Lawrence,[1] explained that "DOE had reached its final decision regarding [LeBoeuf's] disclosure, and ... the decision was made by DOE not to authorize West Valley to engage our services." *Id.* at 4. According to Mr. McBride, LeBoeuf partner, Brian O'Neill, left two messages with DOE's general counsel, but the general counsel did not return the calls. *See* Second McBride Aff. at 8.

Subsequently, on June 21, 2001, West

---

1. The court notes that no party submitted affidavits from West Valley or DOE representatives.

Valley retained a law firm[2] other than the plaintiff for the West Valley contract. *See* Third McBride Aff. at 2; Order Denying T.R.O., June 22, 2001 (Hogan, C.J., as Motions Judge) ("Order") at 2.

Anticipating future injury, Mr. McBride argues that many of his former clients will also need DOE approval if they wish to retain LeBoeuf in the future. *See* Third McBride Aff. at 3. Mr. McBride contends that DOE's "decision to retaliate against LeBoeuf for bringing this civil action" will hinder LeBoeuf's transportation-law practice. *See* Third McBride Aff. at 3. Finally, Mr. McBride also states that DOE's action is harming his reputation and stigmatizing him and LeBoeuf. *See id.* at 3–4.

### B. Procedural History

In the underlying lawsuit, the plaintiff filed a complaint on March 27, 2000, and then a first amended complaint on February 6, 2001. The plaintiff alleges that the defendant acted in an arbitrary, capricious, and illegal manner by awarding the Yucca Mountain contract to the law firm of Winston & Strawn. *See* First Am.Compl. ¶¶ 58–84. In the first amended complaint, LeBoeuf explains that Winston's representation of two DOE contractors created an impermissible conflict of interest that should have disqualified Winston from the bidding. *See id.* ¶ 73.

More recently, on June 22, 2001, the plaintiff filed the present action: a motion for a temporary restraining order and a preliminary injunction. In its motion, the plaintiff asks the court, first, to enjoin DOE from permitting West Valley to retain a law firm in place of LeBoeuf and, second, to enjoin DOE from preventing its contractors and subcontractors from hiring LeBoeuf. *See* Pl.'s Proposed Order for T.R.O.; Pl.'s Mot. According to the plaintiff, DOE debarred the plaintiff from all

contracts involving DOE, in violation of the Constitution and various federal regulations. *See* Pl.'s Mot. at 6. LeBoeuf predicates its motion for injunctive relief on its first amended complaint, which pertains to the Yucca Mountain contract. *See* Pl.'s Mot.; Pl.'s Reply; First Am.Compl.

Responding to the plaintiff's initial request for a temporary restraining order to preserve the status quo, the court ruled that the plaintiff's request was moot because West Valley had already retained a new firm for its waste-cleanup contract with DOE. *See* Order. The court also stated that it may not have jurisdiction over the plaintiff's claim. *See id.* Shortly thereafter, the intervenor-defendant of the underlying action, Winston, filed an opposition to LeBoeuf's motion, arguing that the All Writs Act, 28 U.S.C. § 1651(a), does not give this court jurisdiction over the plaintiff's claim. *See* Interv.'s Opp'n.

On June 29, 2001, LeBoeuf replied to Winston's opposition, requesting different injunctive relief. In its reply, LeBoeuf requests that DOE be enjoined from debarring LeBoeuf from the contract with West Valley and from any other DOE contractor or subcontractor, that DOE express to West Valley that LeBoeuf has no conflict that would prevent LeBoeuf from providing legal services to West Valley, and that West Valley again consider retaining LeBoeuf. *See* Pl.'s Reply; Pl.'s Proposed Order for Prelim.Inj.

In response, DOE filed a motion to dismiss and to strike the plaintiff's motion for a preliminary injunction and related submissions on July 9, 2001. DOE bases its motion to dismiss on LeBoeuf's lack of jurisdiction and failure to state a claim on which relief can be granted. *See id.* The defendant asserts that because the plaintiff did not base its motion for a preliminary

---

**2.** The parties have not established, with cer- tainty, the name of this law firm.

injunction on "an allegation of fact or law contained in a complaint filed with this Court, the Court has no jurisdiction to hear the claim." *See* Def.'s Mot. to Dismiss (Def.'s Mot.) at 5.

### III. DISCUSSION

### A. The Court Denies the Plaintiff's Motion for a Preliminary Injunction Because the Court Lacks Jurisdiction

Rather than filing its motion for injunctive relief with a new complaint, the plaintiff predicates its motion on its first amended complaint. The plaintiff argues that the All Writs Act, 28 U.S.C. § 1651(a), gives the court jurisdiction to hear the motion for injunctive relief. The court determines, however, that because the facts, parties, and legal issues presented by the motion and by the first amended complaint are not closely related, the court does not have jurisdiction over the motion. As a result, the court denies the plaintiff's motion.

### 1. Legal Standard for Jurisdiction to Entertain a Motion for Injunctive Relief

A party commences a civil action by filing a complaint. *See* FED.R.CIV.P. 3. When no complaint is filed, the court lacks jurisdiction to entertain the plaintiff's petition for injunctive relief. *See P.K. Family Restaurant v. Internal Revenue Serv.*, 535 F.Supp. 1223, 1224 (N.D.Ohio 1982) (dismissing the case when the plaintiff filed no complaint but sought injunctive relief to delay the collection of taxes); *In the Matter of the Tax Indebtedness of Boyle*, 1996 WL 806190 (C.D.Cal.1996). In addition, this court's local rules require that "[a]n application for preliminary injunction shall be made in a document separate from the complaint." LCvR 65.1.

Even when a motion for a preliminary injunction is predicated on a complaint, if the motion raises issues different from those presented in the complaint, the court has no jurisdiction over the motion. *See Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir.1994); *Stewart v. U.S. Immigration and Naturalization Serv.*, 762 F.2d 193, 198–199 (2d Cir.1985). When the motion is based on facts closely related to the facts in the complaint, however, the court may have jurisdiction to review a motion for preliminary relief pursuant to the All Writs Act, 28 U.S.C. § 1651(a). *See Equal Employment Opportunity Comm'n v. Locals 14 and 15, Int'l Union of Operating Eng'rs*, 438 F.Supp. 876, 879–80 (S.D.N.Y. 1977). While a court can use the All Writs Act to issue process in aid of its jurisdiction, it cannot use the Act to enlarge its jurisdiction. *See Clinton v. Goldsmith*, 526 U.S. 529, 534–35, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); *Pennsylvania Bureau of Correction v. United States Marshals Serv.*, 474 U.S. 34, 43, 106 S.Ct. 355, 88 L.Ed.2d 189 (1985); *Telecommunications Research and Action Ctr. v. Federal Communications Comm'n*, 750 F.2d 70, 78 (D.C.Cir.1984) (stating that the All Writs Act does not independently grant jurisdiction to a court);

### 2. Analysis of the Court's Jurisdiction to Entertain a Motion for Injunctive Relief

The court denies the plaintiff's motion for injunctive relief because the court does not have jurisdiction over the motion. While the complaint pertains to the Yucca Mountain contract awarded by DOE to Winston in 1999, the motion relates to a distinct set of facts, namely the 2001 West Valley contract that LeBoeuf lost. *See id.* Specifically, the complaint involves neither West Valley nor the firm West Valley subsequently hired instead of LeBoeuf, and the instant motion involves West Valley

but has no relevance to Winston. *See id.* In short, the complaint involves facts, legal issues, and parties different from those presented in the pending motion. *See id.*

Similarly, in *Devose v. Herrington,* a district court denied the plaintiff's motion for a preliminary injunction that was filed without a closely related complaint. *See* 42 F.3d at 471. The plaintiff's complaint alleged that the defendant prison officials had denied him adequate medical treatment for injuries he received while being transported between prison units, while the motion for a preliminary injunction involved disciplinary charges that the defendants allegedly filed against the plaintiff in retaliation for the underlying civil action. *See id.* The Eighth Circuit affirmed, explaining that "[a]lthough these new assertions might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction in this lawsuit." *Id.* (citing *Stewart,* 762 F.2d at 198–99) (finding that since the incident relating to the plaintiff's motion for injunctive relief presented issues entirely different from those alleged in the complaint, the district court lacked jurisdiction over the motion).

In the case at bar, the court reiterates that for jurisdiction to exist over the present motion for injunctive relief, the motion would have to be closely related to the facts, legal issues, and parties addressed in the plaintiff's first amended complaint. *See Equal Employment Opportunity Comm'n,* 438 F.Supp. at 880. In this case, however, as in *Devose* and *Stewart,* the only connections between the underlying lawsuit and the motion for a preliminary injunction are that both involve the plaintiff and the defendant, and that the plaintiff believes the defendant is retaliating against it because of the underlying lawsuit. *See Devose,* 42 F.3d at 471; *Stewart,* 762 F.2d at 198–199. As the Second and

Eighth Circuits have held in similar situations, this connection to the complaint is insufficient. *Id.* Accordingly, the court lacks jurisdiction over the motion for a preliminary injunction and thus denies the plaintiff's motion.

## B. Alternatively, the Court Denies the Plaintiff's Motion based on an Injunctive–Relief Analysis

Even assuming *arguendo* that the plaintiff did have jurisdiction, the court would deny its motion because the plaintiff fails to make the necessary showing for injunctive relief.

### 1. Legal Standard for Injunctive Relief

This court may issue a preliminary injunction only when the movant demonstrates that:

(1) there is a substantial likelihood plaintiff will succeed on the merits; (2) plaintiff will be irreparably injured if an injunction is not granted; (3) an injunction will not substantially injure the other party; and (4) the public interest will be furthered by an injunction.

*Davenport v. Int'l Bhd. of Teamsters,* 166 F.3d 356, 361 (D.C.Cir.1999). These four factors are not considered in isolation from one another, and no one factor is necessarily dispositive as to whether injunctive relief is warranted. *See CityFed Fin. Corp. v. Office of Thrift Supervision,* 58 F.3d 738, 747 (D.C.Cir.1995). Rather, the factors "interrelate on a sliding scale and must be balanced against each other." *Davenport,* 166 F.3d at 361 (citing *Serono Labs. v. Shalala,* 158 F.3d 1313, 1317–18 (D.C.Cir.1998)); *see WMATA v. Holiday Tours, Inc.,* 559 F.2d 841, 842–43 (D.C.Cir. 1977) (the court "examines each requirement in light of the others to determine whether an injunction would be proper").

In this case, LeBoeuf faces an additional hurdle because it seeks a prelimi-

nary injunction that would alter the status quo: a mandatory injunction as opposed to a prohibitive injunction. *See Mylan Pharms., Inc. v. Henney,* 94 F.Supp.2d 36, 58 (D.D.C.2000) (Urbina, J.). When a party seeks an injunction to reverse policies that are already in place, "the moving party must meet a higher standard than in the ordinary case by showing 'clearly' that he or she is entitled to relief or that 'extreme or very serious damage' will result from the denial of the injunction." *See Columbia Hosp. for Women Found. v. Bank of Tokyo–Mitsubishi, Ltd.,* 15 F.Supp.2d 1, 4 (D.D.C.1997) (citation omitted), *aff'd,* 159 F.3d 636 (D.C.Cir.1998) (table, text in Westlaw); *see also Alaska Excursion Cruises, Inc. v. United States,* 595 F.Supp. 14, 18 (D.D.C.1984) (attempt to alter *status quo,* rather than preserve it, must be supported by showing that "the facts and law clearly support" such a change.)

In addition, the trial court has the discretion to issue or deny a preliminary injunction, and it should use this discretion sparingly. *See Ambach v. Bell,* 686 F.2d 974, 979 (D.C.Cir.1982). As the Supreme Court has stated, "[i]t frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong,* 520 U.S. 968, 972, 117 S.Ct. 1865, 138 L.Ed.2d 162 (1997).

### 2. Injunctive Relief Analysis

### a. The Plaintiff Fails to Demonstrate a Strong Likelihood of Success on the Merits

Demonstrating a substantial likelihood of success on the merits is particularly important when requesting injunctive relief. Indeed, absent a "substantial indication" of likely success on the merits, "there would be no justification for the court's intrusion into the ordinary processes of administration and judicial review." *American Bankers Ass'n v. National Credit Union Admin.,* 38 F.Supp.2d 114, 141 (D.D.C.1999) (quoting *WMATA,* 559 F.2d at 843).

As previously noted, LeBoeuf argues that DOE denied LeBoeuf the West Valley contract in retaliation for LeBoeuf's lawsuit involving the Yucca Mountain contract. *See* Pl.'s Mot. According to LeBoeuf, "due process of law requires that before a contractor may be blacklisted (whether by debarment or suspension) [it] must be afforded specific procedural safeguards including, *inter alia,* a notice of the charges against it, an opportunity to rebut those charges, and under most circumstances, a hearing." *Id.* at 4–5 (citing *Art–Metal–USA, Inc. v. Solomon,* 473 F.Supp. 1, 4 (D.D.C.1978)). As a regulatory matter, LeBoeuf states that the Federal Acquisition Regulation ("FAR") sets forth various grounds for debarment, and provides for notice and an opportunity to be heard for any contractor who may be debarred. *See* Pl.'s Mot. at 5 (citing FAR 9.406–1 to 3).

In support of its claims, LeBoeuf provides this court only with affidavits from its own employees who recount what West Valley representatives attribute to DOE representatives. The affidavits provide neither first-hand information nor the names of the individuals to whom the information is attributed. The facts LeBoeuf has presented fail to show that DOE has debarred LeBoeuf or that this is why LeBoeuf lost the West Valley contract. Thus, the plaintiff fails to meet the high standard required for mandatory-injunction requests. *See Columbia Hosp. for Women Found.,* 15 F.Supp.2d at 4.

### b. The Plaintiff Fails to Show that it will Suffer Irreparable Harm

To show irreparable harm, the movant must substantiate a claim that irreparable

injury is "certain to occur in the near future, and that this harm could be prevented by the injunction." *Wisconsin Gas Co. v. Federal Energy Regulatory Comm'n*, 758 F.2d 669, 674 (D.C.Cir.1985). A loss that could be recovered by compensatory or other corrective relief is irreparable harm "only when the loss threatens the very existence of the movant's business." *See id.*

The plaintiff argues that without injunctive relief, it "faces the distinct possibility of the irretrievable loss of substantial work" related to its transportation-law practice and "deprivation of constitutional rights." Pl.'s Mot. at 8–9. The harm the plaintiff articulates, however, constitutes economic harm caused by the loss of the West Valley contract and the *anticipated* harm caused by the loss of *potential* clients. *See* Pl.'s Mot.; Pl.'s Reply. To make a showing under this prong, the plaintiff must show that the injury is "certain and great," "actual not theoretical," and would threaten the existence of the firm. *See Wisconsin Gas Co.*, 758 F.2d at 674. Because LeBoeuf's claims are both uncertain and theoretical, LeBoeuf has not shown irreparable harm. Also, though the plaintiff argues that its transportation-law practice may suffer, LeBoeuf does not demonstrate whether the very existence of the *entire* law practice is at stake. In short, the plaintiff's possible damage amounts only to economic loss and falls well short of irreparable harm.

### c. The Plaintiff's Requested Injunction May Substantially Injure the Law Firm Retained by West Valley

This circuit has held that "[t]he persuasiveness of petitioner's threatened irreparable harm is greatly diminished when its prevention will visit similar harm on other interested parties." *Ambach*, 686 F.2d at 979 (internal citation omitted). In considering whether other parties may suffer from an injunction, the court notes that on June 21, 2001, a new law firm was hired to represent West Valley for its contract with DOE. *See* Third McBride Aff. at 2. If the court were to grant the plaintiff's motion for a preliminary injunction, this could terminate the new firm's contract with West Valley, substantially injuring this third party. Hence, the balancing of the equities weighs against granting the requested injunctive relief.

To summarize, the plaintiff makes a weak showing on the first three prongs of the injunctive-relief analysis: likelihood of success on the merits, irreparable harm, and the balance of the equities. Therefore, even if the court had subject-matter jurisdiction, the court would deny the plaintiff's request for injunctive relief.

## IV. CONCLUSION

For all these reasons, the court denies the plaintiff's motion for a preliminary injunction. An order directing the parties in a fashion consistent with this Memorandum Opinion is separately issued this 17 day of September, 2001.

## *ORDER*

### DENYING THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

For the reasons stated in the court's Memorandum Opinion issued separately and contemporaneously this 17 day of September, 2001, it is

**ORDERED** that the plaintiff's motion for a preliminary injunction is **DENIED;** and it is

**FURTHER ORDERED** that the defendant's and the intervenor-defendant's motions to dismiss and strike the plaintiff's

motion for a preliminary injunction are **DENIED AS MOOT.**

   **SO ORDERED.**