LEBOEUF, LAMB, GREENE & MACRAE, LLP, Plaintiff,

v.

Spencer ABRAHAM, Secretary, and the U.S. Department of Energy, Defendants.

Civil Action No. 01–0269(RMU).

United States District Court, District of Columbia.

July 30, 2002.

See also 205 F.R.D. 13.

James L. Feldesman, Eugene R. Fidell, Kathy S. Ghiladi, Feldesman, Tucker, Leifer, Fidell & Bank, L.L.P., Washington, DC, R. Kenly Webster, R. Kenly Webster, P.C., Washington, DC, for the Plaintiff.

Robert D. McCallum, Jr., David M. Cohen, Harold D. Lester, Jr., Kenneth S. Kessler, Washington, DC, for the Defendants.

## *MEMORANDUM OPINION*

URBINA, District Judge.

### DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This lawsuit is one of many controversies generated by the federal government's decision to store the nation's nuclear waste in Yucca Mountain, Nevada. The plaintiff, LeBoeuf, Lamb, Greene & MacRae, L.L.P. ("LeBoeuf"), filed this lawsuit to protest the defendants' decision to award a contract for legal services regarding the licensing of the Yucca Mountain nuclear waste repository site ("Yucca Mountain") to Winston and Strawn, L.L.P. ("Winston"). The defendants are Spencer Abraham, sued in his official capacity as the Secretary of the Department of Energy, and the Department of Energy (collective-

ly, "DOE"). This matter comes before the court on the plaintiff's and the defendants' cross-motions for summary judgment. The plaintiff claims that the defendants violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, in awarding the Yucca Mountain· contract to Winston. Specifically, the plaintiff alleges that DOE violated various rules and regulations controlling government-contract procurement and acted in bad faith. The plaintiff moves for a directed award of the contract at issue, attorneys' fees, and bid-preparation costs. In contrast, DOE argues that it acted appropriately and that the request for a directed award of the contract is moot because the contract no longer exists. For the reasons that follow, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment.

## II. BACKGROUND

In this case, LeBoeuf protests DOE's awarding of a contract for legal services. Pl.'s Mot. for Summ. J. at 5. The defendants issued a solicitation on May 27, 1999 requesting legal services to assist DOE's Office of General Counsel in preparing a license application for Yucca Mountain and to represent DOE in proceedings before the Nuclear Regulatory Commission ("NRC").[1] *Id.* at 6; Am. Compl. ¶ 26. The contract solicitation required that, along with the standard Department of Energy Regulations ("DEAR"), the bidders had to conform to a conflict of interest clause to prevent any possibility of a conflict of interest. Pl.'s Statement of Material Facts ¶ 12. In addition, a Technical Evaluation Committee ("TEC") evaluated the· contract applicants' technical capabilities and their compliance with conflict of interest rules. AR Vol. 3, Tab 11 at 229. The contracting officer also had an obligation to review the applications for any conflicts of interest. *Id.*

Only two law firms, LeBoeuf and Winston, submitted bids in response to the solicitation. Am. Compl. ¶¶ 32–33. In the first round, LeBoeuf received a perfect technical score of 1,000 points, Winston scored 925 points, and the difference in the prices was negligible. Pl.'s Mot. for Summ. J. at 7. In a final round asking for best and final offers, both LeBoeuf and Winston scored 1,000 points on the technical aspect, but Winston's cost was $3.7 million lower than LeBoeuf's. *Id.* After both the contracting officer and the TEC reviewed Winston's application for any possible conflicts of interest, DOE awarded the contract to Winston. Defs.' Statement of Material Facts ¶ 29. Winston provided services pursuant to the contract until November 29, 2001, when Winston asked DOE to cancel the contract because "state officials and some others" questioned whether Winston's work for DOE and for other clients conflicted, and DOE agreed to cancel the contract.[2] Pl.'s Mot for Summ. J. Ex. 19 (letter from Winston to DOE), Ex. 20. DOE has not released a new solicitation for the remaining legal work. Frame Decl. at 2.

LeBoeuf filed a bid protest with the General Accounting Office ("GAO") on October 4, 1999, claiming that prior legal

---

1. The relevant regulatory background is provided in an earlier opinion in this case, *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Abraham,* 205 F.R.D. 13, 14 (D.D.C.2001).

2. Interestingly, DOE's Office of Inspector General evaluated whether Winston's lobbying work for the Nuclear Energy Institute, which Winston did not disclose in its bid for the Yucca Mountain contract, created a conflict of interest. DOE Office of Inspector General, Inquiry Report (filed on Nov. 19 2001) at ii, 24 (recommending further evaluation into this matter by the Yucca Mountain contracting officer, DOE's General Counsel, and other DOE officials).

services Winston provided for TRW Environmental Safety Systems, Inc. ("TRW") created a conflict of interest that disqualified Winston from the Yucca Mountain contract. Am. Compl. ¶ 38. In 1991, DOE contracted with TRW through a managing and operating contract ("1991 contract"). Pursuant to the 1991 contract, TRW had overall responsibility for administrating the Yucca Mountain Project from 1991 to 1999. Pl.'s Mot for Summ. J. at 6. TRW contracted with Winston to provide technical support services for the Yucca Mountain project to ensure their required compliance with the 1991 contract. Am. Compl. ¶ 19.

GAO denied LeBoeuf's protest, stating that Winston was eligible for the Yucca Mountain contract because the Yucca Mountain contract was a follow-on contract from TRW's prior contract with Winston (relating to the 1991 contract), thus negating any conflicts of interest. AR Vol. 4, Tab 27 at 9. Furthermore, GAO stated that it lacked jurisdiction over rules of professional responsibility. *Id.* at 10, n. 7.

On March 27, 2000, LeBoeuf filed this administrative action review case in the United States District Court in Nevada, which transferred the case to this court on January 3, 2001. Pl.'s Mot. for Summ. J. at 7. This court denied the State of Nevada's motion to join the action as an intervening party on May 17, 2001 and also denied the plaintiff's second motion for preliminary injunctive relief on September 17, 2001. *LeBoeuf, Lamb, Greene & Mac-Rae, L.L.P. v. Spencer*, 205 F.R.D. 13 (D.C.Cir.2001); *LeBoeuf, Lamb, Greene & MacRae, L.L.P. v. Abraham*, 180 F.Supp.2d 65 (D.D.C.2001). The Nevada court granted Winston's motion to intervene, and then on January 29, 2002 this court granted Winston's motion to withdraw from the case. The plaintiff filed a motion for summary judgment on January 29, 2002 and the defendants filed a cross-motion for summary judgment on February 15, 2002. Both motions are ripe for review.

## III. ANALYSIS

### A. Legal Standard for Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. By pointing to

the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505 (internal citations omitted).

### B. The Plaintiff's Request for a Directed Award of the Yucca Mountain Contract Is Moot

■ The plaintiff has asked for relief in the form of a directed award of the government contract, attorneys' fees, and bid-preparation costs. Am. Compl. ¶ 5; Pl.'s Mot. for Summ. J. at 14; Pl.'s Response to Court Order Dated June 25, 2002 at 4. Yet, DOE and Winston agreed to cancel the Yucca Mountain contract on November 29, 2001. Pl.'s Mot. for Summ. J. Ex. 20. The plaintiff asserts that the solicitation does still exist and that the defendant will unlawfully attempt to reprocure the contract using the same solicitation. Pl.'s Opp'n at 28–29. In its motion for summary judgment, DOE argues that the court lacks jurisdiction over the plaintiff's request for a directed award of the Yucca Mountain contract because the contract no longer exists and thus the request is moot. Defs.' Mot. for Summ. J. at 30. In its reply, DOE argues that because the plaintiff never reiterated the request for bid-preparation costs asserted in the Amended

Complaint, the only remedy the plaintiff seeks is a directed award, thus the entire case is moot. Defs.' Reply at 2–4. The plaintiff does, however, in a later submission filed in response to a court order asking about the requested relief, assert that it still seeks bid-preparation costs. Pl.'s Response to Court Order Dated June 25, 2002 at 1–4. Nevertheless, because the Yucca Mountain contract no longer exists, the issue of a directed award is moot.[3]

### 1. Legal Standard for Mootness

■ Before a court may consider the merits of a case, it must determine whether it has subject-matter jurisdiction. The Supreme Court has held that Article III's case-or-controversy requirement prohibits courts from issuing advisory opinions or decisions based on hypothetical facts or abstract issues. *Flast v. Cohen,* 392 U.S. 83, 96, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). Courts can only rule on actual and ongoing controversies. *McBryde v. Comm. to Review Circuit Council Conduct and Disability Orders of the Judicial Conference of the U.S.,* 264 F.3d 52, 55 (D.C.Cir.2001). Accordingly, a court may not rule on the merits of a case in which the claims for relief are moot.

■ A case is moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Albritton v. Kantor,* 944 F.Supp. 966, 974 (D.D.C.1996) (quoting *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 59 L.Ed.2d 642 (1979)). An intervening factual event may render a claim moot because the change in circumstances deprives the plaintiff of a present right to be vindicated or causes

---

**3.** DOE argues that the plaintiff failed to preserve its request for bid preparation costs. Defs.' Response to Pl.'s Response to Court Order Dated June 25, 2002 at 1–5. The court, however, does not reach this issue because

the court denies the plaintiff's motion for summary judgment, determining that DOE did not violate the APA in awarding the Yucca Mountain contract to Winston.

the plaintiff to no longer have a stake in the outcome of the litigation. *Aiona v. Judiciary of Hawaii,* 17 F.3d 1244, 1248 & n. 6 (9th Cir.1994). The intervening event will render the case moot only if the event eliminates the effect of the alleged violation and there is no reason to believe the alleged violation will recur. *Honig v. Students of the California Sch. for the Blind,* 471 U.S. 148, 149, 105 S.Ct. 1820, 85 L.Ed.2d 114 (1985).

 If the plaintiff retains some personal stake in the controversy and there are some outstanding issues that a court may resolve, those claims may proceed for review even though an intervening event might have rendered other issues moot. *Hartmann v. Loudoun County Bd. of Educ.,* 118 F.3d 996, 1000 n. 1 (4th Cir. 1997); *accord McPherson v. Michigan High Sch. Athletic Ass'n,* 119 F.3d 453, 458–59 (6th Cir.1997). The movant must also show that "interim relief and events have completely and irrevocably eradicated the effects of the alleged violation." *Albritton,* 944 F.Supp. at 974 (citing *Davis,* 440 U.S. at 631, 99 S.Ct. 1379). The burden of establishing mootness rests on the party raising the issue, and it is a heavy burden. *Davis,* 440 U.S. at 631, 99 S.Ct. 1379; *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); *Motor & Equip. Mfrs. Ass'n v. Nichols,* 142 F.3d 449, 458–59 (D.C.Cir. 1998).

### 2. The Plaintiff's Requested Relief for a Directed Award of the Yucca Mountain Contract Is Unavailable

The defendants claim that this court no longer has subject-matter jurisdiction over the plaintiff's request for a directed award of the Yucca Mountain contract because intervening events have rendered Le-Boeuf's case moot. Defs.' Mot. for Summ. J. at 30. LeBoeuf's motion for summary judgment requests only a directed award of the contract and attorneys' fees. Pl.'s Mot. for Summ. J. at 33. In response to the court's request for supplemental briefing, however, the plaintiff states that it also requests bid-preparation costs. Pl.'s Response to Court Order Dated June 25, 2002 at 1. Consequently, the issue of mootness pertains only to LeBoeuf's request for a directed award.

After DOE awarded the Yucca Mountain contract to Winston, Winston provided legal services pursuant to the contract for two years. Pl.'s Mot. for Summ. J. Ex 20. The critical intervening event occurred on November 29, 2001, when DOE and Winston cancelled the Yucca Mountain contract by bilateral modification. Pl.'s Mot. for Summ. J. Ex 20; DOE Status Report Filed Jan. 18, 2002; Frame Decl. at 1. No new contract for legal services currently exists. *Id.* The contracting officer responsible for the Yucca Mountain contract stated that Winston offered to conclude the contract and DOE accepted pursuant to Federal Acquisition Regulation ("FAR") § 52.243–3, 48 C.F.R. § 52.243–3. Frame Decl. at 2. Due to the cancellation of the Yucca Mountain contract, LeBoeuf's requested remedy of a directed award of that contract is no longer available and, therefore, this request is moot. *Murphy v. Hunt,* 455 U.S. 478, 481, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *County of Los Angeles,* 440 U.S. at 631, 99 S.Ct. 1379.

The plaintiff provides two main arguments against mootness. First, the plaintiff claims that the solicitation continues to exist even though the defendants and Winston cancelled the contract. Pl.'s Opp'n at 29. Second, the plaintiff claims that the defendants unlawfully may attempt to reprocure the legal contract for the remainder of the work using the same procurement. *Id.* at 30. Both of these arguments are based on case law that is easily distinguished from the situation at bar.

■ LeBoeuf first argues that the actual solicitation is separate from the contract. Pl.'s Opp'n at 28–9. Despite the fact that DOE cancelled the contract, Le-Boeuf claims that DOE still needs legal services and that the Comptroller General allows for funds obtained for a particular contract in one fiscal year to pay for a replacement contract. *Id.* at 28–30. Le-Boeuf assumes that the *availability* of funds creates an *obligation* to procure a replacement contract. *Id.* The mere fact that the Comptroller General allows the government to use funds from a previous contract for a replacement contract to make accounting more convenient for GAO, *Matter of Funding Replacement Contracts,* 68 Comp. Gen. 158, 160 (1988), however, does not *require* the agency to procure a replacement contract. *Matter of Atlantic Scientific and Tech. Corp.,* 1997 WL 666982, *3–4 (Comp.Gen. Oct.27, 1997). The agency may work without the contract, use in-house resources, or use new contracts. *Id.* at *3. Thus, the plaintiff's assertion that funds exist for a contract is correct, but extraneous to the issue of mootness.

The plaintiff's second contention is that the defendants may attempt to reprocure a contract for legal services through a solicitation highly similar to the original solicitation. Pl.'s Opp'n at 30. The plaintiff avers that courts consider this type of agency action illegal because it circumvents the government procurement process. *Id.* (citing *Parcel 49C Ltd. P'ship v. United States,* 31 F.3d 1147 (Fed.Cir. 1994)); *126 Northpoint Plaza Ltd. P'ship v. United States,* 34 Fed.Cl. 105 (Fed.Cl. 1995). In *Parcel 49C,* the Court of Appeals for the Federal Circuit overruled the General Services Administration's ("GSA") cancellation of a solicitation for a new headquarters for the Federal Communications Commission because the sole reason for the cancellation was to avoid working with the chosen contractor. 31

F.3d at 1148–51. The court ruled that this action was "incredible and pretextual," and stated that without a valid reason for canceling the procurement, the government "violated its duty to conduct a fair procurement." *Id.* at 1151. In *Northpoint,* the Federal Claims Court overruled GSA's action canceling an outstanding solicitation for offers after amending the solicitation five times in an attempt to disqualify a particular bidder. 34 Fed.Cl. at 108. The court determined that the numerous amendments and cancellations were an attempt to avoid a contract with that bidder. *Id.* at 109.

Unlike in *Parcel 49C* and *Northpoint,* the defendants in this case have not released another solicitation since the cancellation of the Yucca Mountain contract. Defs.' Reply at 7. Also, in both *Parcel 49C* and *Northpoint,* the government cancelled the solicitation before awarding the contract, whereas in this case, DOE cancelled the contract after one party won and acted pursuant to the contract for two years. *Parcel 49C,* 31 F.3d at 1149; *Northpoint,* 34 Fed. Cl. at 106. Finally, because Winston already completed a portion of the services DOE solicited, any new solicitation would be for different services than in the original solicitation and not simply an attempt to avoid contracting with LeBoeuf. AR Vol. 3, Tab 11 at 48–50. In sum, the plaintiff's arguments are not convincing and the court holds that the request for a directed award of the contract is moot.

### 3. The Court Denies the Motion to Strike Mr. Frame's Declaration

■ The plaintiff also brings a motion to strike Craig Frame's declaration dated March 12, 2002 and filed with the defendants' reply. Mr. Frame, the contracting officer who reviewed LeBoeuf's and Winston's bids at issue in this case, submitted a declaration elaborating on Winston's and DOE's agreement to cancel the Yucca

Mountain contract. Frame Decl. at 1. As demonstrated in Part III.B.2 *supra*, the declaration is relevant to DOE's mootness argument. The plaintiff states two arguments for its motion to strike. Neither argument is persuasive.

■ First, the plaintiff contends that since the declaration is not in the administrative record, it is inadmissible. While the plaintiff is correct that courts are generally bound by the administrative record, *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 36 L.Ed.2d 106 (1973) (per curiam), there are exceptions. Parties may submit supplemental evidence that is not argumentative:

> (1) when agency action is not adequately explained in the record before the court; (2) when the agency failed to consider factors which are relevant to its final decision; (3) when an agency considered evidence which it failed to include in the record; (4) when a case is so complex that a court needs more evidence to enable it to understand the issues clearly; (5) in cases where evidence arising after the agency action shows whether the decision was correct or not; (6) in cases where agencies are sued for a failure to take action; (7) in cases arising under the National Environmental Policy Act; and (8) in cases where relief is at issue, especially at the preliminary injunction stage.

*Esch v. Yeutter*, 876 F.2d 976, 991 (D.C.Cir.1989) (quoting Stark & Wald, *Setting No Records: The Failed Attempts to Limit the Record in Review of Administrative Action*, 36 Admin. L.Rev. 333, 345 (1984) (footnote omitted)). In this case, the cancellation of the contract discussed in Mr. Frame's declaration occurred on November 29, 2001 *after* GAO's adjudication of LeBoeuf's bid protest. Pl.'s Mot. for Summ. J. Ex. 20. The facts discussed in the declaration clearly occurred "after the agency action" and the facts "show[ ]

whether the decision was correct or not," *Esch*, 876 F.2d at 991, in that they demonstrate whether or not jurisdiction exists—a matter which this court must address. Consequently, the declaration falls under exception five enumerated in the *Esch* case and the court allows it for the purpose of evaluating whether this court has jurisdiction. *Id.*

■ Second, the plaintiff maintains that the declaration raises facts that the defendants should have raised in their cross-motion for summary judgment. Pl.'s Mot. to Strike at 5. This position, though often correct, does not prevail here for the following reasons. A party may submit new facts in a reply, when supported by a declaration, if the facts are needed to directly rebut a claim by the opposing party. *See Smith v. Burns Clinic Med. Ctr.*, 779 F.2d 1173, 1175 n. 6 (6th Cir.1985).

The reply declaration at issue here states that the Yucca Mountain contract no longer exists. Frame Decl. at 1–2. The declaration does not provide the court with a new fact, but rather it provides stronger support for a fact—that the contract no longer exists—previously stated in the defendants' cross-motion for summary judgment. Defs.' Mot. for Summ. J. at 30–32. The defendants provided the declaration to rebut the plaintiff's assertion that the "procurement at issue has most certainly not ceased to exist." Pl.'s Opp'n at 28. This declaration assists the court by clarifying facts already asserted by both parties to the court. *See Smith*, 779 F.2d at 1175 n. 6. Consequently, the court admits the declaration and considers it in evaluating the mootness claim.

## C. DOE Did Not Violate the APA In Awarding the Yucca Mountain Contract to Winston

■ Even though this court cannot grant a directed award, the court retains jurisdiction over this case to the extent

that the plaintiff requests bid-preparation costs. *Hartmann,* 118 F.3d at 1000 n. 1. The court determines that the plaintiff has failed to demonstrate that the defendants' decision to award the Yucca Mountain contract to Winston was arbitrary, capricious, an abuse of discretion, or in violation of law. 5 U.S.C. § 701 *et seq.* Consequently, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion.

### 1. Legal Standard for Review Pursuant to the APA

Pursuant to the APA, 5 U.S.C. § 701 *et seq.,* a court should set aside a contract award if the plaintiff shows that the administrative decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In order to meet this heavy burden, the plaintiff must prove "... either that (1) the procurement official's decisions on matters committed primarily to his own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations." *Kentron Hawaii, Ltd. v. Warner,* 480 F.2d 1166, 1169 (D.C.Cir.1973) (citing *M. Steinthal & Co. v. Seamans,* 455 F.2d 1289, 1301 (1971); *Wheelabrator Corp. v. Chafee,* 455 F.2d 1306, 1312 (1971)). The plaintiff bears this burden of proof since the agency's decision is entitled to a presumption of regularity. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971), *overruled on other grounds, Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977).

In bid-procurement cases, a court will overturn a contracting officer's decision if the plaintiff proves that the decision was in bad faith or had no reasonable basis. *Iceland Steamship Co. v. United States,* 201 F.3d 451, 461 (D.C.Cir.2000). In addition, the disappointed bidder must prove that "an agency action was unreasonable and resulted in both 'a significant error in the procurement process,' and clear prejudice to the bid protester." *Informatics Corp. v. United States,* 40 Fed. Cl. 508, 513 (Fed.Cl.1998) (internal citation omitted).

The court may not substitute its own judgment for the agency's, and must only determine whether the agency's decision does not violate the law, has a reasonable basis, and is supported by facts within the record. *Tutor–Saliba Corp. v. U.S. Army Corps of Engineers,* No. 94–0908, 1995 WL 520765, *6 (D.D.C. Aug.23, 1995). As long as there is a reasonable basis for the agency's decision, "the court should stay its hand even though it might ... have reached a different conclusion...." *M. Steinthal & Co.,* 455 F.2d at 1301.

Contracting officers in bid procurement cases merit the same deference as governmental agencies since the officers are part of the contracting agency. *Iceland Steamship Co.,* 201 F.3d at 461 (citing *Keco Indus., Inc. v. United States,* 203 Ct.Cl. 566, 492 F.2d 1200, 1203 (1974)). Contracting officers have " 'very wide discretion' and ... a complaining bidder 'would normally have to demonstrate bad faith or lack of any reasonable basis in order to prevail.' " *Id.* Nevertheless, " 'a procurement decision is not "irrational" simply because we might have reached a different decision in the first instance.' But we look for no more than 'substantial compliance with applicable law and baseline substantive rationality....' " *Id.* at 461 (citing *Elcon Enters., Inc. v. Washington Metro. Area Transit Auth.,* 977 F.2d 1472, 1478–79 (D.C.Cir.1992)).

The standard is especially deferential to the agency in a case such as this one in which GAO has made a determination upholding the agency's decision on the

merits. *M. Steinthal,* 455 F.2d at 1304. While courts consider the decision of GAO as an expert opinion, courts need not defer to the GAO's decision. *Delta Data Sys. Corp. v. Webster,* 744 F.2d 197, 201 (D.C.Cir.1984).

In applying the standard for review, the focal point should be the existing administrative record and not a new record created by the court. *Camp,* 411 U.S. at 142, 93 S.Ct. 1241. The court looks only to the facts contained within the administrative record before the agency at the time of the agency's decision. *Id.* A court may conduct a *de novo* review of a case only when the prior adjudication used inadequate fact-finding procedures. *Overton Park* at 415, 91 S.Ct. 814. The D.C. Circuit has instructed that parties may supplement the record to help explain issues to the court when the record is unclear. *Esch,* 876 F.2d at 991; Part III.B.3 *supra* (quoting *Esch,* 876 at 991). The supplementary evidence, however, should not override the general rule excluding extrinsic evidence from judicial review, especially when the supplementary evidence is argumentative in nature. *Corel Corp. v. United States,* 165 F.Supp.2d 12, 31 (D.D.C.2001) (citing *Nat'l Treasury Employees Union v. Hove,* 840 F.Supp. 165, 168 (D.D.C.1994)).

## 2. DOE Did Not Violate the APA In Awarding the Yucca Mountain Contract to Winston

The plaintiff presents three main arguments in attempting to show that DOE's selection of bidders for the Yucca Mountain contract violated the APA.[4] First, Le-

Boeuf argues that DOE ignored Winston's conflict of interest and violated the FAR and DEAR provisions that govern government procurements. Am. Compl. ¶¶ 71–75. Second, LeBoeuf contends that DOE ignored Nevada's Rules of Professional Responsibility that disqualified Winston from competing for the contract. Am. Compl. ¶¶ 73–75, 81; Pl.'s Mot. for Summ. J. at 11. Third, the plaintiff argues that DOE acted in bad faith. Pl.'s Mot. for Summ. J. at 14. In contrast, the defendant argues that the plaintiff failed to demonstrate any violation of the APA. Defs.' Mot. for Summ. J. The court grants the defendants' cross-motion for summary judgment.[5]

### a. DOE Did Not Violate Procurement Rules and Regulations In Determining That Winston Had No Conflict of Interest

In attempting to prove that DOE violated the APA in awarding the Yucca Mountain contract to Winston, LeBoeuf argues that the defendants did not adhere to procurement rules governing conflicts of interests. Am. Compl. ¶¶ 71–75. In conflict of interest cases, however, courts afford great deference to the contracting officer's and agency's determination that no conflict of interest exists. *Informatics Corp.,* 40 Fed. Cl. at 513. Thus, the court should not disturb a contracting agency's determination unless the plaintiff can show that the determination is unreasonable. *Id.* "Mere disagreement with the contracting officer's evaluation does not itself render the evaluation unreasonable." *Id.* (citing *Litton Sys., Inc.,* B–237596.3, 90–2 CPD ¶ 115).

---

4. While the plaintiff makes numerous arguments, few are based on compelling evidence, and some are based on no evidence at all. *See, e.g.,* Part III.C.2.c *infra.* The plaintiff's motion for summary judgment also fails to present the legal standard for APA review as it applies to a bid-protest action.

5. As all material facts are within the administrative record, no material issues of fact are in dispute. *See Camp,* 411 U.S. at 142, 93 S.Ct. 1241. Summary judgment is appropriate in this case because the defendant is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c).

In the case at bar, the defendants made a number of determinations about possible conflicts of interest before awarding the contract. In addition to DOE's standard organizational conflict of interest ("OCI")[6] clauses, the defendants created a special OCI clause especially for this solicitation that disqualified offerors who were currently representing clients in adjudicatory proceedings against the defendants.[7] AR Vol. 3, Tab 11 at 50. The defendants' TEC also evaluated whether any OCI's existed between the offeror and DOE. *Id.* at 128; Defs.' Statement of Material Facts ¶ 27. In addition to the TEC review, the contracting officer, pursuant to FAR § 9.504(a), 48 C.F.R. § 9.504(a) (1998), also identified and evaluated potential conflicts of interests and could, if necessary, take action to avoid, neutralize, or mitigate them before awarding the contract. AR Vol. 3, Tab 11 at 127–29; Defs.' Statement of Material Facts at ¶ 29.

■ In reviewing a potential contractor for a possible OCI, a contracting officer may consider "information from within the Government or from other readily available sources," including "the files and the knowledge of personnel within the contracting office, other contracting offices, the cognizant contract administration and audit activities and offices concerned with contract financing." FAR § 9.506, 48

C.F.R. § 9.506. Since the contracting officer need not document his or her considerations unless a substantive issue concerning a conflict of interest exists, the lack of documentation is not a violation or abuse of discretion. *Id.* Because courts accord deference to a contracting officer's decisions, the plaintiff has a heavy burden to prove that the contracting officer's decision was incorrect. *Iceland Steamship Co.*, 201 F.3d at 461.

Utilizing both TEC's and the contracting officer's reviews, DOE found no OCI's between the defendants and Winston. AR Vol. 3, Tab 11 at 124, 128, 130, 151, 277–283. The plaintiff claims that the reason DOE found no OCI is because DOE only considered information that Winston provided. Pl.'s Reply at 19. The plaintiff, however, never offers any proof that the contracting officer should have used any other sources of information and failed to do so. The plaintiff cites to paragraph 29 of the defendants' statement of material facts, claiming that paragraph 29 supports the notion that the contracting officer only considered information from Winston and deferred to the generalizations of the TEC. Pl.'s Reply at 18–19. Paragraph 29 does not support this assertion, however, but states that the contracting officer followed the standard procedure to reach his conclusion that no OCI existed.[8] Accordingly, the

---

**6.** An organizational conflict of interest exists when a contractor "is unable or potentially unable to render impartial assistance or advice to the Government, or the person's objectivity in performing the contract work is or might be otherwise impaired or a [contractor] has an unfair competitive advantage." FAR § 2.101, 48 C.F.R. § 2.101.

**7.** Because of the delays in the opening of the Yucca Mountain waste repository, many utilities have sued DOE claiming that DOE should have attempted to open Yucca Mountain more quickly. Any firms that represented utilities with interests adverse to DOE would create

an OCI if they represented DOE during proceedings for Yucca Mountain. Defs.' Statement of Material Facts; AR Vol. 1, Tab 1 at 274–78, 280–81.

**8.** Defendants' Statement of Material Facts ¶ 29 provides:

The TEC found that the information provided by Winston in its OCI disclosure statement presented no OCI. In his proposal for the source selection official, the contracting officer followed a standard format and found that Winston did not have any OCI that precluded its selection for an award. AR Vol. 3, Tab 11 at 130, 151 and 128–129.

plaintiff has failed to demonstrate that the contracting officer improperly reached his decision that no OCI existed.

Further, upon reviewing this case, GAO determined that no conflict of interest was evident or should have been evident. GAO ruled that the contract with DOE was a follow-on to the TRW contract and, thus, DOE could procure Winston's services under the DEAR even though Winston had previously worked for TRW. AR Vol. 4, Tab 26 at 10–11; DEAR § 952.209–72(b)(1)–(2), 48 C.F.R. § 952.209–72. While GAO decisions do not bind the court, the determinations of GAO are expert opinions that assist this court. *Delta Data,* 744 F.2d at 201.

The plaintiff's attempts to counter GAO's decision are based on a TRW cover letter dated May 15, 1992 stating "[f]irms providing technical support services to TRW ... will be disqualified from bidding on the procurement the [DOE] intends to publish in the future." Pl.'s Mot. for Summ. J. Ex. 3 at 1. GAO did not include this letter in its administrative record because the plaintiff filed it untimely. *Id.* at 14–15, n. 29. The plaintiff now attempts to enter the letter into evidence, even though it was not part of the original record. While the D.C. Circuit does allow supplementation of the administrative record, *Esch* 876 F.2d at 991, courts should not admit extrinsic evidence in the judicial review phase when the supplementary evidence is argumentative as opposed to explanatory in nature.[9] *Corel,* 165 F.Supp.2d at 31. The plaintiff has presented no evidence that DOE is bound by this letter or, most significantly, that this letter even applies to the Yucca Mountain contract at issue here. The court will not consider this letter because it is argumentative evidence that is not part of the administrative record.[10] *Camp,* 411 U.S. at 142, 93 S.Ct. 1241. Therefore, the court upholds DOE's determination that no OCI existed between Winston and DOE.

### b. The Rules of the State of Nevada Do Not Apply to Government Procurement

 Next, the plaintiff contends that the defendants should not have granted the contract to Winston because granting the contract violated the Nevada Code of Professional Responsibility. Am. Compl. ¶¶ 73–75, 81. LeBoeuf also charges that a violation of the Nevada Code of Professional Responsibility is a violation of FAR § 9.104–1, which states that a contractor must otherwise be qualified and eligible to receive an award under the applicable laws and regulations. 48 C.F.R. § 9.104–1; AR Vol. 3, Tab 11 at 176. LeBoeuf misinterprets this statute. The meaning of the words "under applicable laws and regulations" in federal procurement law refers to *federal* regulations. *Leslie Miller v. State of Ark.,* 352 U.S. 187, 190, 77 S.Ct. 257, 1 L.Ed.2d 231 (1956) (per curiam); *Don't Tear It Down, Inc. v. Penn. Ave. Dev. Corp.,* 642 F.2d 527, 535 and n. 71 (D.C.Cir.1980) (citing *Leslie Miller,* 352 U.S. at 190, 77 S.Ct. 257). Thus, the federal government decides who is a "responsible bidder" using applicable *federal* laws and regulations. *Leslie Miller,* 352 U.S. at 190, 77 S.Ct. 257. If state regulations determined a responsible bidder, this would "give[s] the [s]tate's licensing board a virtual power of review over the federal determination of 'responsibility' and would thus frustrate the expressed federal policy

---

9. *See* Part III.B.3 *supra.*

10. More specifically, the plaintiff presents no evidence that the Yucca Mountain solicitation is the solicitation that the TRW letter prohib-

its the TRW awardee from bidding for. As such, the TRW letter would not aid the plaintiff even if the court did consider the letter as evidence.

of selecting the lowest responsible bidder". *Id.*

### c. LeBoeuf Fails to Prove That DOE Acted In Bad Faith

In its motion for summary judgment, LeBoeuf argues that the defendants acted in bad faith in awarding the Yucca Mountain contract to Winston. Pl.'s Mot. for Summ. J. at 14. Though the plaintiff provides numerous arguments and assertions that the defendants acted in bad faith, the plaintiff fails to cite law and evidence that sufficiently support these claims.

For instance, the plaintiff makes an assertion that even the plaintiff acknowledges is not based on actual facts: "[a]fter a request from an 'interested party' to the Contracting Officer, which the Contracting Officer now claims was someone from an outside law firm whose name he cannot recall (*but who must have been from Winston*), the Clause was carefully clarified so that … Winston … would not be disqualified." *Id.* at 21 (emphasis added). The plaintiff provides no evidence regarding the identity of the caller or supporting its characterization of the conversation. *Id.*

The plaintiff also states that DOE *must have known* that Winston's conflict of interest statement was defective. *Id.* at 24. On the contrary, the court disagrees entirely with the plaintiff's characterization of Winston's OCI disclosure as obviously defective, too narrow to address all required topics, and raising "red flags." *Id.* at 24–25; AR Vol. 3, Tab 11 at 229. Finally, the plaintiff also argues that DOE *should have realized* that Winston used confidential information during its oral presentation. *Id.* at 30. The plaintiff does not cite to evidence that supports its accusation. The plaintiff's only evidence that DOE allowed Winston to use confidential information is the plaintiff's promise that "[Winston] had to have used it" during their three hours of oral presentation. *Id.*

at 28. In sum, the plaintiff has failed to convince the court that DOE operated in bad faith.

The plaintiff attempts to portray itself in the case at bar as the victim of a conspiracy between DOE and Winston by using speculation and unsupported characterizations of the facts. The court, however, bases its rulings on evidence and law. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505; *Harding,* 9 F.3d at 154. The plaintiff has failed to satisfy its burden to establish that the defendants violated the APA in awarding the Yucca Mountain contract to Winston. Accordingly, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment.

## IV. CONCLUSION

For all these reasons, the court denies the plaintiff's motion for summary judgment and grants the defendants' cross-motion for summary judgment. An order directing the parties in a manner consistent with this Memorandum Opinion is separately and contemporaneously issued this 30th day of July 2002.

### *ORDER*

DENYING THE PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT

For the reasons stated in this court's Memorandum Opinion separately and contemporaneously issued this 30th day of July 2002, it is

**ORDERED** that the plaintiff's motion for summary judgment and attorneys' fees is **DENIED;** and it is

**FURTHER ORDERED** that the defendants' cross-motion for summary judgment is **GRANTED;** and it is

**ORDERED** that the plaintiff's motion to strike is **DENIED;** and it is

**FURTHER ORDERED** that the plaintiff's motion to supplement its reply is **DENIED;** and it is

**ORDERED** that by August 7, 2002 the parties file a notice that recommends to the court which portions of this Order and the attached Memorandum Opinion must be redacted before they are unsealed.

**SO ORDERED.**